No. 76,870

*In re* Tax Appeal of ALSOP SAND COMPANY, INC.

(962 P.2d 435)

Opinion filed July 10, 1998.

*John Michael Hale*, of the Kansas Department of Revenue, argued the cause, and *Amy J. Weller*, legal intern, was with him on the briefs for appellant Kansas Department of Revenue.

*Kevin M. Fowler*, of Frieden, Haynes & Forbes, P.P.C., of Topeka, argued the cause, and *Derrick L. Roberson*, and *Shon C. Robben*, of Arthur-Green, L.L.P., of Manhattan, were on the brief for appellee Alsop Sand Company, Inc.

The opinion of the court was delivered by

ALLEGRUCCI, J.: Taxpayer Alsop Sand Company, Inc., (Alsop) appealed the Kansas Department of Revenue's (KDR) assessment of additional sales and use taxes on parts of machinery and equipment. Alsop contended that the items were exempt from taxation as "major components" of manufacturing machinery and equip-

ment under K.S.A. 79-3606(kk). The hearing officer disagreed. Alsop appealed to the Board of Tax Appeals (BOTA), which concluded that the items were exempt. KDR appealed to the Court of Appeals, which concluded that the items were not exempt. 24 Kan. App. 2d 527, 948 P.2d 667 (1997). This court granted Alsop's petition for review.

This dispute revolves around the interpretation of K.S.A. 79-3606(kk), specifically, whether Alsop's machinery and equipment parts are exempt from sales and compensating use taxation as "major components" of manufacturing machinery and equipment. The facts are concisely stated by the Court of Appeals as follows:

"Alsop operates sand dredging operations. Sand is a natural abrasive. During the audit period in question, June 1, 1989, to May 31, 1992, Alsop spent over $50,000 replacing pump parts, screws, screens, pipe flanges, pipe elbows, clamps, a winch, an impeller, and an electric motor on its dredges. Alsop expensed all of the above expenditures and did not capitalize any.

"In September 1992, the KDR issued Alsop a notice of assessment of additional retailer sales and use taxes in the amounts of $49,011 and $3,673, including interest and penalties, for fuel purchases and the various equipment, machinery, and parts mentioned above for the period in question. The total assessments of additional taxes, including interest and penalties, were subsequently reduced to $9,893 and $3,510.

"On appeal to the Director of Taxation, an administrative law judge (ALJ) denied Alsop's exemption request and found that the impeller, plates, sleeves, screens, pipe flanges, screws, pipe elbows, motor, and other pump parts did not qualify for the exemption stated in 79-3606(kk) because the items were not capitalized and were not used directly and primarily for manufacturing. The ALJ upheld the KDR's assessments.

"On appeal to BOTA, BOTA found that the components at issue were exempt from taxation under K.S.A. 79-3606(mm) (now K.S.A. 1996 Supp. 79-3606[kk]) because the items were used in the production process. BOTA rejected the KDR's contention, noting: 'There exists no law or regulation which states that expensed items do not qualify whereas capitalized items will. The distinction may be easy to apply, but it does not appear in law.' BOTA further noted that the size and cost of the items in issue were not determinative of whether the items constituted 'major components' for purposes of the exemption. BOTA found the appropriate test was to consider the importance of the equipment and its purpose in the production process, stating:

'An exempt item would do its essential function on the processing machinery at some point before the final product is produced. In this case, the components are parts of the machinery used to produce the sand. Without these particular

items on the processing machinery the process would grind to a halt. These items are then integral to the process of producing salable sand. The evidence shows that these items transport, convey, or handle the sand before it reaches its final stage.'" 24 Kan. App. 2d at 528-29.

The statute exempts the following from sales and use taxes:

"(kk). . . [A]ll sales of machinery and equipment used directly and primarily for the purposes of manufacturing, assembling, processing, finishing, storing, ware-housing or distributing articles of tangible personal property in this state intended for resale by a manufacturing or processing plant or facility or a storage, ware-housing or distribution facility:

. . . .

(2) For purposes of this subsection 'machinery and equipment used directly and primarily' shall include, but not be limited to:
(A) Mechanical machines or major components thereof contributing to a man-ufacturing, assembling or finishing process." K.S.A. 79-3606(kk)(2)(A).

According to the Court of Appeals, "[t]he term 'major components' is not defined by statute or case law." 24 Kan. App. 2d at 528. KDR defines "major component" as a part or equipment that has been designated by the taxpayer as a capital expenditure for federal tax purposes. BOTA defines "major component" as a part that is nec-essary to the process.

The Court of Appeals noted that it was faced with a "disagree-ment between two administrative agencies as to the interpretation of a statute" and that it would consider the position of each. 24 Kan. App. 2d at 530. According to the Court of Appeals, neither warranted particular deference, however, because "'[t]he final con-struction of a statute rests within the courts.' [Citation omitted.]" 24 Kan. App. 2d at 530. We agree. With respect to the construction of statutory tax exemptions and the burden of proof, the Court of Appeals quoted *In re Tax Appeal of Taylor Crane & Rigging, Inc.*, 22 Kan. App. 2d 27, 28, 913 P.2d 204, *rev. denied* 258 Kan. 858 (1995), to the effect that statutory exemptions are to be strictly construed against the taxpayer, who bears the burden of establish-ing an exemption. 24 Kan. App. 2d at 529.

KDR is the administrative agency charged with the responsibility of implementing and enforcing tax legislation. When properly promulgated by the administrative agency in accordance with K.S.A. 77-415 *et seq.*, administrative rules and regulations have the

force and effect of law. Any rule and regulation not filed and published as required by the statutes, however, "shall be of no force or effect." K.S.A. 77-425. In the present case, KDR relied in the Court of Appeals on a published "'rule' which defines the phrase 'major component' as those items which are capitalized for federal income tax purposes." 24 Kan. App. 2d at 530. The Court of Appeals, however, concluded the "rule" to have no force or effect because it "was contained in an information guide, which also stated: 'This information guide was designed for informational purposes only. Under no circumstances should the contents be used or cited as authority for setting or sustaining a technical position.'" 24 Kan. App. 2d at 530. There is no contention that any of the contents of KDR's Information Guide 19-88-1, Kansas Retailers' Sales Tax; Sales Tax Exemption for Manufacturing Machinery and Equipment, have been filed and published so as to have the force and effect of law. In its supplemental brief in this court, KDR does not mention its previous reliance on the "rule" in the information guide.

The Court of Appeals, despite KDR's misplaced reliance on the "rule," found its argument more convincing than Alsop's:

"[W]e should not completely disregard the KDR's interpretation of 79-3606(kk). The KDR interpretation establishes a bright line test that is easily applied and understood by taxpayers. By requiring an item to be a capital expenditure to qualify as a major component, the KDR's test implicates a belief that those items with a useful life extending beyond the close of a taxable year are an integral part of the manufacturing process. See 26 U.S.C. § 263 (1994).

"Alsop maintains the KDR's test fails to consider the importance of each component or its role in the overall production process and arbitrarily denies exemption to any item of property which is simply expensed by a taxpayer. Alsop argues the test allows the KDR to simply review a taxpayer's federal income tax return to determine whether a particular component was capitalized and, thus, qualifies for the exemption. Alsop contends the KDR's interpretation is too restrictive.

"We conclude that the KDR's position is rationally related to the legislature's objective to reduce the impact state taxation has on the production of goods. The KDR's position and definition provides a bright line for business planning and leaves much of the classification to the taxpayer. It takes the uncertainty out of business decisions and, potentially, will save on appeals, costs, attorney fees, penalties, and interest." 24 Kan. App. 2d at 530-31.

In its petition for review, Alsop argued that the decision of the Court of Appeals is contrary to this court's decision in *Board of Leavenworth County Comm'rs v. McGraw Fertilizer Serv., Inc.*, 261 Kan. 901, 933 P.2d 698 (1997). Alsop's representation of the holding in that case was as follows: "[U]nless there was express statutory language in the Kansas statutes, a court should *not* rely on federal income tax provisions to interpret Kansas taxing statutes." Review of the case does not support this assertion. The court held that the valuation standard, "retail cost when new," may include charges for freight and installation but not for sales tax. 261 Kan. at 923. The court's opinion includes some discussion why I.R.S. publications and federal income tax concepts provide neither answers nor persuasive analogs to the peculiar Kansas valuation standard, but the court did not state a general rule cleaving state from federal income tax provisions. In that case, the Director of the Division of Property Valuation relied on an I.R.S. publication to support his contention "that to 'men of common understanding,' the term 'cost' means 'total acquisition cost' to the consumer." 261 Kan. at 912. The court observed: "I.R.S. publications, accounting research bulletins, and interpretations of the I.A.A.O. [International Association of Assessing Officers] are not persuasive authority regarding 'common understanding.' " 261 Kan. at 913. The court wrapped up its discussion of "other authority" with the following:

"While various theories of market value appraisal have been used in other jurisdictions as a rationalization for considering components of expense such as freight and installation charges and sales tax, this does not dictate the same result in Kansas where 'retail cost when new' has replaced 'fair market value.' No other taxing jurisdiction in the United States, including the I.R.S., uses the terminology 'retail cost when new.' This term is unique to the State of Kansas. It is not the equivalent of 'fair market value,' 'cost basis for federal income tax purposes,' 'cost basis for accounting purposes,' or 'cost approach to fair market value.' The phrase 'retail cost when new' contains words which are commonly used and understood. Persons of common understanding would not expect to have to refer to definitions utilized by other states and the I.A.A.O. and I.R.S. to arrive at a definition of the term. Based upon this analysis, statutory definitions and case law from other jurisdictions are not persuasive." 261 Kan. at 914-15.

This court's opinion in *Board of Leavenworth County Comm'rs* does not rule out the possibility that federal income tax provisions

in appropriate circumstances may prove to be valuable references in state tax matters, with or without express state statutory reference to the federal code.

The legitimate point that Alsop makes with regard to *Board of Leavenworth County Comm'rs* and other cases is that ordinary words ought to be given their ordinary meanings. Thus, words that are commonly used and understood should not be removed from the realm of common understanding by construing them with reference to some external source. Alsop contends that the phrase "major component" is one of common usage and common understanding. It urges the court to make the following inquiry: "[H]ow would a person of common understanding interpret the term 'major component'?" Alsop's suggested answer, or more accurately lack of one, seems indicative of the weakness in its argument. Rather than saying how a person of common understanding would interpret "major component," Alsop states that "such a person certainly would not be expected to be required to refer to the morass of laws, regulations and case law regarding what is and what is not a capital expenditure." Alsop does not attempt to set out a definition of "major component" that would reflect the common understanding, and one senses that Alsop regards "major component" as one of those things one will know when one sees it.

Understandably, Alsop praises BOTA's approach: "BOTA carefully reviewed the nature of Alsop's operation and the role of the various components within the integrated manufacturing process before determining that those items were exempt as 'major components' of manufacturing equipment. This was the kind of case-by-case analysis which the legislature intended."

Pertinent portions of BOTA's decision are set out here:

"This Board conducted a hearing in this matter on July 6, 1995. After considering all of the evidence presented thereat, and being fully advised in the premises, the Board finds and concludes as follows:

. . . .

"3. The Department issued an assessment against the Taxpayer for compensating use taxes in the amount of $2,276.00. . . .

"4 . . . [T]he amount of $2,075.79 in compensating use tax is at issue. . . .

. . . .

"6. . . . $1,409.69 in sales tax assessments is at issue. . . .

"7. The Taxpayer is the owner of sand mining operations . . . . The sand is mined by a dredge from pits in two basic types of operations . . . called the simple operation and the complex operation.

. . . .

"14. The equipment consists of pumps, screens, sieve and pump parts such as impellers, plates, and sleeves.

"15. . . . [T]he impeller must be replaced once a year, the plates are replaced between 1 and 3 years, and the sleeves are replaced once a year. . . . The stationary screens are replaced as often as every eighteen hours. . . . The vibrating screens last about a year. . . .

"16. An electric motor used to blend sand in the pug mill was also purchased. The motor has a life of 10 years. . . .

"17. The Taxpayer has a dredge that was built in the 1940's; however, every component on it has been changed out and replaced with new components. . . .

"18. The Taxpayer capitalizes the entire dredge, but not the replacement parts. Those replacement parts, such as sleeves, flanges, and so forth, are expensed. . .

"19. The hydraulic motors on the dredge have a life span of ten to fifteen years. . . .

. . . .

"38. . . . [T]he operation would quickly grind to a halt if the machinery and equipment at issue here were not present. The equipment at issue is used in the production process. Some of the items are small and inexpensive and some are larger and expensive. However, size and cost is not a determinative factor. . . . [T]he parts at issue are somehow in contact with the sand or are used with other parts which are in contact with the sand before it is in its final form.

. . . .

"41. An exempt item would do its essential function on the processing machinery at some point before the final product is produced. In this case, the components are parts of the machinery used to produce the sand. Without these particular items on the processing machinery the process would grind to a halt. These items are then integral to the process of producing salable sand. The evidence shows that these items transport, convey, or handle the sand before it reaches its final stage.

. . . .

"43. Therefore, the Board finds that the items of machinery and equipment and major components thereof are exempt from sales and use taxes under [K.S.A. 79-3606(kk)."

From these excerpts we can see that BOTA's working definition for major components of machines that contribute to a manufacturing process disregards size and cost and focuses exclusively on indispensability. In BOTA's view, an exempt item would be "in-

tegral to the process," would have an "essential function," and, without it, "the operation would quickly grind to a halt."

KDR contends that BOTA's interpretation disregards the legislature's intent to exempt only *major* components. According to KDR, "[t]he intent of the legislature was not to exempt every gasket, clamp, nut and bolt used to replace broken or worn out parts; only major components." If the legislature's intent had been to exempt every integral component, KDR's argument continues, it would have used the phrase "important components" rather than "major components." If the phrase "major components" is made up of ordinary words that should be given their ordinary meaning, as Alsop argues, there should be something major, as opposed to minor, about an exempt component.

KDR further argues that BOTA's interpretation fails to take into consideration that when the legislature intended to exempt repair and replacement parts, it expressly identified them. For example, in K.S.A. 79-3606(g), the legislature exempted repair, modification, and replacement parts for aircraft used in interstate commerce. In addition, in 79-3606(t), repair and replacement parts for farm machinery and equipment are exempted. The implication KDR would have the court draw seems to be that the absence of the words "repair parts" or "replacement parts" in 79-3606(kk) excludes them from exemption under that subsection. This implication, however, would go far beyond KDR's official position in excluding all repair/replacement parts from exemption, regardless whether they are designated as capital expenditures for federal income tax purposes. In fact, in Information Guide 19-88-1, which KDR placed in the record, the following example is given of items which may qualify for exemption under 79-3606(kk): "repair and replacement parts that are necessary to and become part of manufacturing machinery and/or equipment if the cost of said repair and replacement parts are capitalized for federal income tax purposes."

Alsop responds that in the absence of either a statutory or regulatory definition of "major component," BOTA's interpretation should prevail. Alsop asserts that KDR "has adopted extensive regulations defining and interpreting the various exemptions contained in K.S.A. 79-3606." A check of the Kansas Administrative

Regulations and the Kansas Register shows that regulations that have been promulgated for the purpose of filling in the framework of the Kansas Retailers' Sales Tax Act, K.S.A. 79-3601 *et seq.*, and the Kansas Compensating Tax Act, K.S.A. 79-3701 *et seq.*, only touch on selected aspects of a comprehensive statutory scheme. See K.A.R. 92-19-1a *et seq.* and K.A.R. 92-20-1 *et seq.* The implication Alsop seems to be fostering is that KDR had its chance but failed to make use of it, thus clearing the field for BOTA. No authority is provided for the proposition that BOTA's interpretation governs in the absence of statutory definition or administrative regulation. In fact, there are no circumstances in which an administrative agency's rulings on questions of law are conclusive. See *Zivanovic*, 261 Kan. 191, Syl. ¶ 2. In all cases, the court's function is to interpret a statute to give it the effect intended by the legislature. 261 Kan. 191, Syl. ¶ 1. If the court were persuaded that BOTA's interpretation reflects the legislature's intention, it would carry the day. By the same token, if KDR had a different interpretation and the court were persuaded that it reflects the legislature's intention, it would get the endorsement. That is precisely the analysis utilized by the Court of Appeals.

In the present case, KDR's practice of treating "major components" as synonymous with capital expenditures for federal tax purposes appears to carry out the legislative intent. For federal tax purposes, the following classifications apply:

"*Capital Expenditures.* The deductibility of an expenditure as a business expense is based on the theory that such expenditure is properly part of the cost of operating the business for the year in which it was paid or incurred. If, however, an expenditure is paid or incurred to acquire an asset, the useful life of which is substantially longer than the taxable year, that expenditure is generally treated as a capital item and not as a currently deductible business expense." 6 Mertens, Law of Federal Income Taxation § 25.01, p. 6.

Expenses that are deducted in the year incurred would not qualify as major components of manufacturing machinery or equipment for sales tax exemption. Capital expenditures that are depreciated over several years of a useful life would. There is an undeniable logic in KDR's position.

The language of the statute is not esoteric or otherwise difficult to understand. "Major" is a familiar word, "component" is a familiar word, and there is nothing incongruous about their combination. What is not plain and clear, however, is the scope of "major." It is a relative rather than a specific term. Without more definition, what is major to one person might be minor (or non-major) to another due to their differing standards of reference. Without more definition, the great gray area in the middle of the continuum from major to non-major would be open to individual interpretations. KDR's definition cleanly separates major from non-major by reference to the federal tax code. As we have seen, in the context of business expenses, the categories of currently deductible expenses and capitalized expenditures correlate reasonably and logically with non-major and major. By using the categories to divide what otherwise would be a continuum, the indefinite scope of "major" may be specified without perverting the word's plain meaning.

The Court of Appeals emphasized the practicality of KDR's definition, stating that it "provides a bright line for business planning" and "takes the uncertainty out of business decisions." 24 Kan. App. 2d at 531. The Court of Appeals also observed that having an easily applied rule potentially would "save on appeals, costs, attorney fees, penalties, and interest." 24 Kan. App. 2d at 531. Because ease of application does not necessarily pertain to legislative intent, it is not a determinative factor in the interpretation of the statute. It is, however, a welcome bonus where, as here, ease of application is in harmony with the interpretation supported by other factors.

In determining legislative intent, we may consider the historical background of the enactment, the circumstances attending its passage, and the purpose to be accomplished. *State v. Le*, 260 Kan. 845, Syl. ¶ 3, 926 P.2d 638 (1996). Examination of the committee records for the 1988 amendments to 79-3606 that added the manufacturing exemptions revealed no clear-cut answer. An inference, though, reasonably may be drawn from the materials presented for the committee's consideration that the concerns of the amendments' backers were for large-scale renovations and additions to the State's manufacturing capacity, not the routine upkeep of ex-

isting machinery. Among the proponents were representatives of the Kansas Industrial Developers Association, Boeing, and the Kansas Chamber of Commerce and Industry. They were united in supporting legislation that would exempt from sales tax the purchase of machinery and equipment in order to make the expense of expansion or modernization of a Kansas manufacturing plant competitive with the expense in neighboring states and in order to assist in attracting new manufacturing plants to this state.

Another indication that routine maintenance and repair parts were not intended by the legislature to be exempted is that 79-3606 contains some express provisions for repair and replacement parts, but not in the subsection for manufacturing machinery and equipment. In determining the legislative intent, the court considers all parts of an act together rather than considering provisions in isolation. *Le*, 260 Kan. at 847-48. As already noted, 79-3606(g) and (t) exempt certain repair and replacement parts for aircraft and farm machinery, thus demonstrating that the legislature knew how to expressly exempt such components when it wanted to. If subsections (g) and (t) are to be read consistently with subsection (kk)(2)(A), the term "major components" in the latter would not be construed to include components that are identified in the former as repair and replacement parts.

In determining the legislative intent, the court presumes that the legislature intended for a statute to be given a reasonable construction so as to avoid unreasonable or absurd results. 260 Kan. 845, Syl. ¶ 4. In the present case, KDR contends that BOTA's interpretation of the exemption is unreasonable in that it reads the word "major" right out of the provision. It certainly may be said that BOTA's interpretation does not give due force and appropriate meaning to both words of the phrase.

We conclude that the application of the rules of statutory construction to K.S.A. 79-3606(kk)(2)(A) leads to the conclusion that the legislature intended to exempt major, but not non-major, components of manufacturing machinery and equipment. KDR's easily applied test of the scope of "major" implements the legislative intent and makes the statute workable for the taxpayer as well as the enforcement agency.

In its petition for review, Alsop also argued that KDR's interpretation of the statute violates the Equal Protection Clauses of the Kansas and United States Constitutions because the test lacks a rational basis and unfairly discriminates between similarly situated taxpayers. Although Alsop seems to imply that the constitutional question arose for the first time as a result of the Court of Appeals' decision, as required for review as a matter of right under Rule 8.03(e)(1) (1997 Kan. Ct. R. Annot. 52), that does not really seem to be the case. The Court of Appeals' ruling was that a component of manufacturing machinery or equipment must be designated as a capital expenditure for federal income tax purposes in order to qualify for exemption under 79-3606(kk). 24 Kan. App. 2d 527, Syl. ¶ 2. If it could be said that a constitutional question arises as a result of that decision, it would not be arising then for the first time. One reason given by the hearing officer for finding that the equipment did not qualify for the exemption was that the items were not capitalized. The Court of Appeals' ruling was a reiteration of that part of the hearing officer's decision. Thus, if the Court of Appeals' decision gave rise to a constitutional issue, the hearing officer's decision did too. However, Alsop's appeal of the hearing officer's decision to BOTA would not have afforded an opportunity to argue equal protection because BOTA is not vested with authority to determine constitutional questions. See *Zarda v. State*, 250 Kan. 364, Syl. ¶ 3, 826 P.2d 1365, *cert. denied* 504 U.S. 973 (1992). At the first opportunity to raise the constitutional issue before a court of law—in the Court of Appeals—Alsop was not the appellant. The constitutional theory of this case would appear to fit within at least one of the exceptions to the general rule that an appellate court will not consider issues not raised below. One exception would be that only a question of law arising on established facts which could be finally determinative of the case is involved. *Board of Sedgwick County Comm'rs v. Kiser Living Trust*, 250 Kan. 84, Syl. ¶ 8, 825 P.2d 130 (1992). Thus, in light of this exception and the unusual procedural history in this case, we will consider the constitutional question raised by Alsop.

The court's consideration of this issue is guided by the following principles stated in *Peden v. Kansas Dept. of Revenue*, 261 Kan. 239, 930 P.2d 1 (1996), *cert. denied* 137 L. Ed. 2d 1029 (1997):

"A statute is presumed constitutional and all doubts must be resolved in favor of its validity. If there is any reasonable way to construe a statute as constitutionally valid, the court must do so. A statute must clearly violate the constitution before it may be struck down. This court not only has the authority, but also the duty, to construe a statute in such a manner that it is constitutional if the same can be done within the apparent intent of the legislature in passing the statute." Syl. ¶ 2.

"Equal protection is implicated when a statute treats 'arguably indistinguishable' classes of people differently. Single and married taxpayers are arguably indistinguishable in a legal sense, and the Kansas Income Tax Act treats single and married taxpayers differently in regard to the tax rates applicable to each group. Thus, the Kansas Income Tax Act implicates equal protection." Syl. ¶ 3.

"The rational basis standard (sometimes referred to as the reasonable basis test) applies to laws which result in some economic inequality. Under this standard, a law is constitutional, despite some unequal classification of citizens, if the classification bears a reasonable relationship to a valid legislative objective." Syl. ¶ 4.

"The reasonable basis test is violated only if the statutory classification rests on grounds wholly irrelevant to the achievement of the State's legitimate objective. The state legislature is presumed to have acted within its constitutional power, even if the statute results in some inequality. Under the reasonable basis test, a statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it." Syl. ¶ 5.

"A plaintiff asserting the unconstitutionality of a statute under the rational basis standard has the burden to negate every conceivable basis which might support the classification." Syl. ¶ 6.

"In taxation, even more than in other fields, legislatures possess the greatest freedom in classification." Syl. ¶ 7.

Although Alsop contends that the statute is unconstitutional because it discriminates between similarly situated taxpayers, it does not really spell out how the discrimination operates. We presume that Alsop has in mind that taxpayers who capitalize and taxpayers who expense are similarly situated. This premise is questionable. As we have seen, capitalized items tend to be assets with useful lives considerably longer than the tax year. Alsop argues that "no consideration is given to whether a particular item is *eligible* to be capitalized or expensed." The answer to this argument would seem to be that items that are capitalized are eligible to be capitalized and, when a taxpayer elects to expense items that are eligible to be capitalized, there must be an advantage to doing so. Because the designation would be a matter of election, the taxpayer presumably

would, and certainly could, include the lack of sales tax exemption in the calculation. Thus, economical inequality would not be a result of the line between major and non-major components, or, at least, not a result unintended by the taxpayer. We agree with the Court of Appeals that this interpretation is rationally related to the legislative objective of reducing the impact of taxation on the production of goods. Thus, we conclude that K.S.A. 79-3606(kk) as interpreted by the Court of Appeals does not violate the Equal Protection Clauses of the Kansas and United States Constitutions.

One final argument is made by Alsop based upon the legislature's recent amendment to 79-3606(kk). That amendment is contained in L. 1998, ch. 188, § 7, which was signed into law by Governor Graves on May 18, 1998, approximately 1 week prior to oral argument in this case. The amendment deletes "major" in 79-3606(kk)(2)(A) and specifically includes "all sales of repair and replacement parts and accessories" within the exemption defined in 79-3606(kk). Alsop contends that under the statute as amended, all the items at issue in this case are exempt. Alsop further contends that because the legislature left intact the original effective date exempting such sales on or after January 1, 1989, it is a clear indication the legislature intended the amendment to be retroactive and include all sales occurring after January 1, 1989. We agree with the first contention but not the latter one.

In *State v. Ford*, 262 Kan. 206, 936 P.2d 255 (1997), defendant Ford argued that an amendment to the drug sentencing grid should be applied retroactively and required resentencing. Ford relied on the plain language of the statute to support retroactive application. The statute that was amended commenced: "For the purpose of sentencing, the following sentencing guidelines grid for drug crimes shall be applied in felony cases . . . committed on or after July 1, 1993." K.S.A. 1996 Supp. 21-4705(a). Ford argued that by failing to change the date, the legislature intended the statute as amended to be applied retroactively.

This court stated the fundamental rule of statutory construction that a statute operates prospectively unless its language clearly indicates that the legislature intended it to operate retroactively. An exception to the rule has been recognized where the statutory

change is procedural or remedial in nature. We held the amendment was substantive. We also concluded the failure to change the original date was not a clear indication that the legislature intended it to act retroactively. We reasoned that the date

"establishes commission of the crime as the controlling event, and it establishes that crimes committed on or after July 1, 1993, will be punished according to the sentencing guidelines. Hence, if the legislature had changed the date in the language prefacing the drug grid to coincide with the effective date of the 1996 amendment, the resulting provision might have been construed to restrict application of the sentencing guidelines to crimes committed on or after July 1, 1996. By not changing the date in K.S.A. 1996 Supp. 21-4705(a), the legislature maintained July 1, 1993, as the date on or after which a crime had to be committed in order for the sentencing guidelines to govern punishment." 262 Kan. at 209.

The basic rationale applied in *Ford* is controlling in the present case. The effective date of the amendment is July 1, 1998, and there is no clear indication by the legislature that it should be applied retroactively; thus, its application is prospective.

The judgment of the Court of Appeals reversing the Board of Tax Appeals is affirmed. The order of the Board of Tax Appeals is reversed.