Jane Conroy, President Kansas State Board of Nursing Landon State Office Building 900 S.W. Jackson, Room 551-S Topeka, Kansas 66612-1230
Dear Ms. Conroy:
You ask whether, pursuant to K.S.A. 1999 Supp. 65-2872(g), a physician may delegate to an individual a function that is normally considered an advanced nursing function, regardless of whether the individual is licensed, or if licensed or registered, what designation the individual holds. Specifically, you give as an example the delegation of the administration of anesthesia.
In Attorney General Opinion No. 95-84 this office considered the delegation of intravenous fluid therapy pursuant to K.S.A. 65-2872. The opinion set forth the issue as follows:
 "[T]he question posed is best approached initially through the healing arts act, K.S.A. 65-2801 et seq., which governs the practice of medicine and surgery through the requirement of a license. Practicing medicine and surgery without a license is unlawful unless one or more of the statutory exemptions applies. K.S.A. 65-2803; 65-2872. The first of two exemptions which are of particular interest is:
 "'(g) Persons whose professional services are performed under the supervision or by order or by referral from a practitioner who is licensed under this act" K.S.A. 65-2872.'
 "(For the sake of simplicity and due to the context of this opinion, a practitioner of the healing arts will be referred to as a physician.)
 "The subsection (g) exemption permits a physician to authorize other persons to perform professional services which, without such authorization, would be considered the unlawful practice of the healing arts. Without going into an extended discussion, suffice it to say that in our opinion IVFT is a `professional service.'"
The opinion concluded:
 "In conclusion a physician may delegate the performance of IVFT to another person, including an LPN, when in the physician's judgment the LPN is sufficiently trained or experienced to perform IVFT. The healing arts act does not specify the type or extent of experience or training, and thus the physician's professional discretion is determinative. The delegation may occur under supervision of the physician, by order of the physician or by referral of the physician. In the absence of any statutory and regulatory requirements, the form of physician supervision, order or referral is also left to the professional judgment and discretion of the physician.
 "A licensed practical nurse or an unlicenced technician who a physician considers qualified through training, experience, or licensure who performs intravenous fluid therapy under supervision, by order or referral of a physician is not considered engaged in the unlawful practice of medicine and surgery. Intravenous fluid therapy is a nursing practice which derives from the practice of medicine and surgery. Thus neither is such licensed practical nurse or unlicenced technician considered engaged in the unlawful practice of nursing even if the licensed practical nurse does not qualify to perform intravenous fluid therapy under the nurse practice act."
We see no reason to revisit the reasoning of this opinion, which we believe to be sound. There have been statutory amendments to the Healing Arts Act, however, that we will consider and we will also address whether specific statutes concerning registered nurse anesthetists preclude delegation of administration of anesthesia.
At the time Attorney General Opinion No. 95-84 was written, the "professional incompetency" section to the Healing Arts Act included a provision defining professional incompetency to include:
 "Delegating professional responsibilities to a person when the licensee knows or has reason to know that such person is not qualified by training, experience or licensure to perform them."[1]
While this provision remains, in 1998 the Legislature added several provisions to the Healing Arts Act concerning delegation.[2] A provision was added to the definition of "professional incompetency" to include:
 "Failing to properly supervise, direct or delegate acts which constitute the healing arts to persons who perform professional services pursuant to such licensee's direction, supervision, order, referral, delegation or practice protocols."[3]
Nothing in this later provision contains a prohibition on delegation. It only emphasizes a physician's duty to supervise such delegation. This provision does not change the analysis set forth in Attorney General Opinion No. 95-84.
At the same time, the Legislature added a new statute to the Healing Arts Act, which provides, in relevant part
 "(a) Every responsible licensee who directs, supervises, orders, refers, accepts responsibility for, enters into practice protocols with, or who delegates acts which constitute the practice of the healing arts to other persons shall:
. . . .
 "(3) direct, supervise, order, refer, enter into a practice protocol with, or delegate to such persons only those acts and functions which the responsible licensee knows or has reason to believe such person is competent and authorized by law to perform."[4]
Again, this section does nothing to preclude delegation generally. It merely reinforces the supervisory role of the physician. The one question would be whether an individual is "authorized by law to perform" the task. Reasoning here could quickly become circular if this restriction is read too narrowly. For instance, generally only certain professionals licensed by the Board of Healing Arts and registered nurse anesthetists are generally authorized to administer anesthesia.[5] A narrow reading of the phrase "authorized by law to perform" would preclude any delegation of any task that falls under the professional responsibility of a physician, except to another licensed professional when the task is within the professional responsibility of that other professional. A narrow reading would, therefore, preclude most delegation to unlicenced individuals, and many acts which are currently delegeted to licensed or registered individuals. Most probably, that phrase refers back to the phrase "enter into a practice protocol with," to prohibit a physician from entering into a practice protocol with an advanced registered nurse practitioner that would exceed that practitioner's normal scope of practice. If the Legislature meant to prohibit delegation of all tasks except when delegated to licensed or registered individuals in whose scopes of practice such duties are a part, it could have said it much more simply.
Testimony before the Senate Committee on Public Health and Welfare supports the conclusion that tasks can be delegated to persons not licensed to perform such tasks. The Kansas Medical Society, which had the bill introduced at its request, generally testified that the bill increased the level of supervision required of a physician. The medical society specifically said of the individuals being supervised:
 "Problems which result from the inadequate direction or supervision are the responsibility of the physician, not the individual being directed or supervised. Some of those individuals have separate practice acts and well defined scopes of practice. However, some are unregulated or unlicenced and their skills and preparation can vary substantially. This bill is intended to establish minimum requirements for the physician's role in such relationships, as well as giving the Board the authority to adopt rules and regulations governing this area.
. . . .
 "This bill shouldn't pose a threat to any group of health care providers. It simply says that when physicians or other licensees of the Board of Healing Arts supervise or direct others, those physicians should do so in a manner that is safe and appropriate for patients."[6]
One amendment that was offered by the Kansas State Board of Nursing, but that was rejected, would have provided:
 "Notwithstanding the provisions of this section, K.S.A. 65-1113, 65-4202, 65-1130 and 65-1158, and amendments thereto, shall govern the direction of registered professional nurses, licensed practical nurses, licensed mental health technicians, advanced registered nurse practitioners, and registered nurse anesthetists by persons licensed by the state board of healing arts to practice medicine and surgery."[7]
The statutes referenced in this proposed provision define the scopes of practice of the various nurses, and as such would have limited nurses to tasks, even when delegated, that are within their scopes of practice.
We find nothing in the legisative history to demonstrate an intent to so drastically limit delegation of tasks. In short, we do not believe the 1998 amendments to the Healing Arts Act change the analysis in Attorney General Opinion No. 95-84.
K.S.A. 1999 Supp. 65-1151 et seq. regulate the practice of registered nurse anesthetists. The scope of practice of registered nurse anesthetists is set forth in K.S.A. 1999 Supp. 65-1118. Authorized functions range from assessing the patient, developing a general plan of anesthesia care with the physician, selecting the proper anesthetic and method for delivery, inducing and maintaining anesthesia, etc. The registered nurse anesthetist performs duties and functions in an "interdependent role as a member of a physician or dentist directed health care team."
K.S.A. 1999 Supp. 65-1162(a) creates the following prohibition:
 "(a) Except as otherwise provided in K.S.A. 65-1151 to 65-1163, inclusive, and amendments thereto any licensed professional nurse or licensed practical nurse who engages in the administration of general or regional anesthesia without being authorized by the board to practice as a registered nurse anesthetist is guilty of a class A misdemeanor."
Anesthesia is defined as follows:
 "(d) `Regional anesthesia' means the use of local anesthetic solutions to produce loss of sensation in circumscribed areas.
 "(e) `General anesthesia' means one that is complete and affecting the entire body with the loss of consciousness."[8]
Strictly applying K.S.A. 1999 Supp. 65-1162(a), a nurse, other than an registered nurse anesthetist, would be deemed to have committed a crime if a physician directed the nurse to "administer" any drug when its use amounted to regional or general anesthesia. Such a strict reading would directly conflict with K.S.A. 65-2872(g). It would also lead to the absurd result that a physician could delegate administration of anesthesia to anyone who possessed the proper training and skills, except for a nurse.
The issue turns over the meaning of the word "administer." In the Pharmacy Act, administer is defined to mean "the direct application of a drug . . . ."[9] But this definition is not necessarily applicable within nursing statutes. A dictionary definition of "administer" is: "To have charge of; manage."[10] When statutory provisions appear to conflict, they are to be interpreted to make them "consistent, harmonious, and sensible."[11] Statutes should be interpreted to avoid unreasonable or absurd results.[12] We believe the dictionary definition of administer is appropriate. A physician who directs anesthesia care is not required to personally apply the drug, but may delegate that task to a nurse as an extra set of hands for the physician. This is distinguished from the practice of a registered nurse anesthetist as set forth in K.S.A. 1999 Supp. 65-1151(a)(1) through (9). A physician may not delegate the entire general practice of nurse anesthesia to anyone other than a registered nurse anesthetist.
In summary, we believe that a physician may delegate the task of actual application of an anesthetic to a nurse, so long as the physician maintains adequate supervision and delegates to someone who possesses the necessary skills and training. The amendments to the Healing Arts Act emphasize physicians' duties to adequately supervise the task, and to delegate to only those with the necessary skills. Statutes concerning registered nurse anethetists do not preclude physician delegation of the actual application of a drug used as an anesthetic, as opposed to delegating the entire practice of anesthesia, so long as these standards are met.
Very truly yours,
 CARLA J. STOVALL Attorney General of Kansas
 Steve Phillips Assistant Attorney General
CJS:JLM:SP:jm
[1] K.S.A. 1999 Supp. 65-2837(a)(26).
[2] L. 1998, Ch. 170.
[3] K.S.A. 1999 Supp. 65-2837(a)(30).
[4] K.S.A. 1999 Supp. 65-28,127.
[5] But see, e.g., K.S.A. 1999 Supp. 65-1163(g).
[6] Minutes, Senate Public Health Welfare Committee, attachment 4.
[7] Id., attachment 7-3.
[8] K.S.A. 1999 Supp. 65-1151(d), (e).
[9] K.S.A. 65-1626(a).
[10] American Heritage Dictionary 79 (2d college Ed. 1991).
[11] State v. Sims, 254 Kan. 1, 10 (1993).
[12] In re Tax Appeal of Aslop Sand Co., 265 Kan. 510, 519 (1998).