Gary A. Anderson Bond Counsel for City of Manhattan 2405 Grand Blvd., Suite 1100 Wichita, Kansas 64108-1594
Dear Mr. Anderson:
As bond counsel for the City of Manhattan, you request our opinion on whether the creation of a transportation district under L. 2002, Ch. 105, the Transportation Development District Act ("Act"), is valid; whether the imposition of an excise tax on a transportation district under the Act is valid; and whether any legal issues related to the special assessment portions of the Act would affect the validity of the remainder of the Act.
House Bill No. 2949 was introduced in the 2002 legislative session for the purpose of providing Kansas municipalities with an additional mechanism for financing transportation-related infrastructure improvements.[1] Project costs are bourne by the local businesses which benefit from the improvements, either through imposition of a local sales tax and/or through special assessments on property within the district.[2] Prior to final passage, Section 6(b) of H.B. 2949 was amended to shift the State's responsibility for collection and administration of the tax to the municipality imposing the tax, and to identify the tax on personal goods and services as an "excise tax," rather than the initially conceived "sales tax."[3]
In general, the Act permits a municipality to create a transportation district when all the property owners of record within the district submit a petition that designates, among other factors, the nature of the proposed improvement project and the proposed method of financing the project.[4] After notice and a hearing, the municipality may create the district and authorize the project, its cost and financing.[5]
Subsequent to an additional notice and the lapse of a thirty-day protest period, the municipality may impose an excise tax on tangible personal property sold at retail or services furnished within the district. The Act specifies the allowable tax increments and requires the tax revenues to be pledged to payment of bonds issued under the Act.
Section 5 of the Act sets out the procedures for imposing special assessments within the district; however, discussion of this financing mechanism is expressly excluded from your opinion request, except as to its severability from the Act.
Lawsuits challenging the district proceedings or the excise tax must be brought within thirty days of the ordinance or resolution creating the district.[6] The excise tax is collected locally "except that such tax shall be subject to the conditions or limitations contained in the provisions of K.S.A. 12-187 to 12-197, inclusive and amendments thereto."[7] Bonds shall be paid "solely" (excluding special assessments) from a pledge of revenues from the excise tax and "any other funds appropriated from the municipality,"[8] except that the bonds may not create general obligations of the municipality or give rise to "a charge against its general credit or taxing powers."[9]
We will examine your first two questions together. When the provisions detailing the special assessment procedures are excluded, it appears creation of the transportation district may only be for the purpose of issuing bonds that are payable from district excise taxes and intended to privately finance district improvements. Creation of the district is not a pre-requisite to financing improvements through funds appropriated by the municipality, the only other permissible source for project payments.[10]
Municipalities do not have inherent powers of taxation; however, they do possess taxation powers granted them by the constitution or by statute[11] The Legislature may vest municipalities with the authority to impose either sales or excise taxes.[12] A long-established principle deems that construction and maintenance of transportation facilities and means such as highways, streets, bridges and tunnels constitute public purposes for which a municipalities' taxation powers may be exercised. "If there be any purpose for which taxation would seem to be legitimate it is the making and maintenance of highways").[13]
The United States Supreme Court has stated the overriding rules for determining the constitutionality of taxing statutes: in brief, a statute must be upheld unless there is no reasonable way to construe it as constitutionally valid; equal protection triggers the rational basis test, which is violated only if the statutory classification rests on grounds wholly irrelevant to the State's objective; "in taxation, even more than in other fields, legislatures possess the greatest freedom in classification."[14]
We know of no provision of the constitution which expressly prohibits creation of taxing districts, presuming the procedures comply with procedural due process protections. However, the Legislature's powers are not unrestricted; within a taxing district, a tax must not be imposed arbitrarily or unreasonably in violation of the Equal Protection Clause.[15]
As we discussed in Attorney General Opinion No. 90-10, "the Equal Protection Clause does not mean that a State may not draw lines that treat one class of individuals or entities differently from the others." The test is whether the difference in treatment is an invidious discrimination.[16] Where taxation is concerned and no specific federal right, apart from equal protection, is imperiled, the States have large leeway in making classifications and drawing lines which in their judgment produce reasonable systems of taxation.
 "The States have a very wide discretion in the laying of their taxes. When dealing with their proper domestic concerns, and not trenching upon the prerogatives of the National Government or violating the guarantees of the Federal Constitution, the States have the attribute of sovereign powers in devising their fiscal system to ensure revenue and foster their local interests. . . . The State may impose different specific taxes upon different trades and professions and may vary the rate of excise upon various products. It is not required to resort to close distinctions or to maintain a precise, scientific uniformity with reference to composition, use or value. . . . [W]e used the phrase `palpably arbitrary' or `invidious' as defining the limits placed by the Equal Protection Clause on state power. State taxes which have the collateral effect of restricting or even destroying an occupation or a business have been sustained, so long as the regulatory power asserted is properly within the limits of the federal-state regime created by the Constitution."[17]
Thus, if a tax classification does not employ a suspect classification (such as race, nationality, etc.) or burden a fundamental right (such as freedom of speech, right to travel, etc.), the classification will be upheld as long as it has a rational relationship to a legitimate governmental interest.[18]
The Transportation Development District Act does not impede a fundamental right or invoke a suspect classification. The subject of the excise tax — financing of public transportation improvements — has been determined to involve a public purpose. We conclude that the excise tax sections of the Act would withstand an Equal Protection analysis.
During the course of studying your questions, we received legal analyses of the Act from bond counsel who represent other municipalities and expressed concerns about the application of the Act. For example, Section 6(b) subjects the tax to the "conditions and limitations" contained in the Sales Tax Act, K.S.A. 12-187, et seq. The Transportation Development District Act is unclear which portions of the sales tax statutes apply to the Act and which portions are excluded, other than the exclusion of collection and administration of the tax; this is problematic as many procedures between the two Acts are in conflict. A further potential conflict is that the Transportation Development District Act permits bonds to be payable from municipal appropriations, while prohibiting bond payments charged against a municipalities' full faith and credit or general taxing powers. A last source of potential conflict, which may result in due process issues, is that the thirty day limitation period to challenge the imposition of the excise tax runs from the date of the creation of the district. Under the Act, notice may not have been published and the hearing on the excise tax and its authorization under Section 6 may not have been held at that point, leaving property owners no recourse once the tax is subsequently imposed.
The final question you raise is whether the special assessment sections of the Act are severable such that the Act is valid whether or not these sections are constitutional. Section 5 of the Act begins with the language, "[i]n addition to any other power provided by law and as a complete alternative to all other methods provided by law. . . ." Thus, the district may be created and bonds may be issued under the Act without triggering the special assessment procedures in Section 5.
The Kansas Supreme Court recently restated the test to be applied to a statute when an unconstitutional portion must be severed for the remainder of the act to stand:
 "Whether the court may sever an unconstitutional provision from a statute and leave the remainder in force and effect depends on the intent of the legislature. If from examination of a statute it can be said that the act would have been passed without the objectionable portion and if the statute would operate effectively to carry out the intention of the legislature with such portion stricken, the remainder of the valid law will stand. Whether the legislature had provided for a severability clause is of no importance. This court will assume severability if the unconstitutional part can be severed without doing violence to legislative intent."[19]
The Tomasic case cites an 1882 case for a further elaboration of the test:
 "The rule is stated very clearly in the early case of Central Branch U.P.R. Co. v. Atchison, T. S.F.R. Co., 28 Kan. 453 (1882), in which it was held:
 "`While it is undoubtedly true that a statute may be constitutional in one part, and unconstitutional in another, yet this rule obtains only where the two parts are separate and independent; and where they are so related that the latter is a condition of, a compensation for, or an inducement to, the former, or where it is obvious that the legislature, having respect to opposing rights and interests, would not have enacted one but for the other, then the unconstitutionality of the latter avoids the entire statute.'"
The special assessment sections of the Act operate independently and are supplemental to the excise tax sections. The two are separate funding mechanisms; there is no indication in the legislative history that the Act would have failed if only one economic tool was available to pay for transportation bonds. It is therefore our opinion that the Act would remain valid if the special assessment sections and references were severed.
In conclusion, it is our opinion that the sections of the Transportation Development District Act, L. 2002, Ch. 105, referring to the creation of the district and the imposition of the excise tax, are valid under an Equal Protection analysis. The sections referring to the special assessments may be severed from the Act, and the remainder of the legislation would remain valid.
Very truly yours,
 CARLA J. STOVALL Attorney General of Kansas
 Nancy L. Ulrich Assistant Attorney General
CJS:JLM:NLU:jm
[1] Minutes, Senate Transportation Committee, March 27, 2002.
[2] Id.
[3] Minutes, Senate Transportation Committee, April 11, 2002.
[4] L. 2002, Ch. 105, § 3(a).
[5] L. 2002, Ch. 105, § 4(b).
[6] L. 2002, Ch. 105, § 7.
[7] L. 2002, Ch. 105, § 6(b).
[8] L. 2002, Ch. 105, §§ 8(c) and 8(d).
[9] L. 2002, Ch. 105, § 10(b).
[10] L. 2002, Ch. 105, § 8.
[11] 16 McQuillan, Municipal Corporations, § 44.05 (3d Ed. 1999 Supp.); 68 Am.Jur.2d Sales and Use Taxes, § 10 (2002).
[12] 16 McQuillan, Municipal Corporations, §§ 44.05, 44.190(10), 44.194; In re Tax Exemption Application of Kaul, 261 Kan. 755, 766
(1997).
[13] Milheim v. Moffat Tunnel Improvement Dist., 262 U.S. 710, 719-20,43 S.Ct. 694, 67 L.Ed. 1194 (1923); Memphis Charleston Railway Co.v. Pace, 282 U.S. 241, 51 S.Ct. 108, 75 L.Ed. 320 (1931).
[14] In re Tax Appeal of Alsop Sand Company, Inc., 265 Kan. 510,522 (1998) (citations omitted).
[15] Id.
[16] Harper v. Virginia Board of Elections, 383 U.S. 663, 666,86 S.Ct. 1079, 16 L.Ed.2d 169 (1966).
[17] Magnano Co. v. Hamilton, 292 U.S. 40, 44-47, 54 S.Ct. 599,78 L.Ed.2d 1109 (1934); Lehnhausen v. Lake Shore Auto Parts Co.,410 U.S. 356, 93 S.Ct. 1001, 35 L.Ed.2d 351,354-55 (1973), reh. den. 411 U.S. 910,93 S.Ct. 1523, 36 L.Ed.2d 200 (1973) (footnotes omitted).
[18] See Allied Stores of Ohio v. Bowers, 358 U.S. 522, 485,79 S.Ct. 437, 3 L.Ed.2d 480 (1959); State ex rel. Tomasic v. KansasCity, Kansas Port Authority, 230 Kan. 404, 425-26 (1981).
[19] Felten Truck Line v. State Board of Tax Appeals, 183 Kan. 287,300 (1958), cited in State ex rel. Tomasic v. Unified Governmentof Wyandotte Co./Kansas City, 264 Kan. 293, 317 (1998).