(29 P.3d 424)

No. 86,766

SOUTHWESTERN BELL TELEPHONE COMPANY, *Appellant*, v.
KANSAS CORPORATION COMMISSION, *Appellee*.

Opinion filed June 29, 2001.

*Bruce A. Ney, April J. Rodewald,* and *Michelle B. O'Neal,* of Topeka, for the appellant.

*John McNish* and *Martha Coffman,* advisory counsel, and *Eva Powers,* assistant general counsel, Kansas Corporation Commission, for the appellee.

Before RULON, C.J., LEWIS and PIERRON, JJ.

PIERRON, J.: This is an appeal by Southwestern Bell Telephone (SWBT) from an order of the Kansas Corporation Commission (Commission) relating to nonrecurring rates for unbundled network elements (UNE). Specifically, SWBT argues the Commission could not make its order retroactive under K.S.A. 66-118*l,* which provided that the Commission's orders became effective 30 days after any motion for reconsideration was denied or ruled upon. SWBT also argues the Commission could not use K.S.A. 2000 Supp. 66-118*l* to make its order retroactive because the 1999 statutory change was not effective until 5 months after the Commission's initial order on February 19, 1999.

On September 11, 1996, Sprint Communications Company, L.P., and the four United Telephone Companies providing local exchange service in Kansas filed an application asking the Commission to open a generic proceeding to examine SWBT's costs and to determine the rates SWBT could charge under the Tele-

communications Act of 1996, 47 U.S.C. § 252 (Supp. V 1999), and the FCC's rules for interconnection, unbundled elements, transport and termination, and wholesale services available for resale. The Commission initiated such a docket later that year. This case is an appeal from that docket.

Pertinent to this appeal is the Commission's order of February 19, 1999, which set recurring and nonrecurring costs and prices for UNEs. On March, 9, 1999, SWBT filed a petition for reconsideration of the February 19, 1999, order specifically asking the Commission to reconsider the costs and prices set for both the recurring and nonrecurring UNEs.

On September 17, 1999, the Commission issued an order revising the monthly recurring UNE prices, as set forth in Attachment A of the order, and ordered SWBT to rerun its nonrecurring cost study using certain criteria outlined by the Commission. In the interim, the Commission ordered that either the nonrecurring costs established by the interconnect agreements with the competitive local exchange carriers (CLECs) or the prices listed in Attachment B of the February 19, 1999, order would apply. SWBT was also ordered to submit a "Master List" of UNEs and their definitions. The Commission ruled that this order was effective upon service pursuant to K.S.A. 2000 Supp. 66-118*l* and K.S.A. 77-530(a).

On October 1, 1999, SWBT filed motions to reconsider and to clarify certain parts of the Commission's September 17, 1999, order. It also asked that the Commission stay the effective date of the order because requiring SWBT to offer rates as set out in the order would cause undue hardship to both SWBT and the CLECs. SWBT claimed that if the prices were put into effect, SWBT would be put in the position of charging rates that did not meet the statutory requirements for UNE rates and the order would require the CLECs, which had availed themselves of these rates, to "true up" the sums based on subsequent Commission orders. In the alternative, SWBT asked that the September 1999, rates be deemed interim rates subject to a final unappealable order and require the CLECs to true up based on the final rates.

The Commission denied SWBT's motion to stay the effective date of the order and held the prices associated with recurring costs, Attachment A, were effective upon service of the order of September 17, 1999, and would remain effective pending the Commission's decision on SWBT's motion for reconsideration. With respect to nonrecurring costs, the prices established in the interconnect agreements would apply. However, to the extent the interconnect agreements did not set prices for the UNEs, the prices listed in Attachment B of the February 1999 order would apply, subject to true up based on the final rates established in this proceeding. The Commission also ordered SWBT to file a master list of recurring and nonrecurring prices for UNEs as established in the February and September 1999 orders.

After a number of intervening motions and orders not critical to the analysis here, the Commission, on November 3, 2000, issued an order determining nonrecurring prices for UNEs. In this order the Commission stated that the prices as set forth were the final prices for nonrecurring UNEs and ordered SWBT to immediately implement rates established in the order.

In response, ATT, SWBT, and Birch Telecom filed motions to reconsider and clarify. Specifically, Birch requested that the nonrecurring prices included in the November 3, 2000, order be used to true up the nonrecurring rates back to the February 19, 1999, order. ATT asked that SWBT be required to refund amounts paid for UNEs in excess of Total Element Long Run Incremental Cost (TELRIC) rates.

The Commission issued its order on the various petitions for reconsideration on December 21, 2000, finding that the effective date of the nonrecurring price order was February 19, 1999, and the prices revised in subsequent orders were effective on February 9, 1999. SWBT was ordered to true up rates back to the effective date of the order, February 19, 1999. SWBT filed a petition to reconsider. The motion was subsequently denied.

SWBT then perfected this appeal.

The parties have briefed two primary questions: (1) Did the Commission have the authority to make its order on UNE prices effective retroactive to February 19, 1999, before the 1999 amend-

ment to K.S.A. 66-118*l* and (2) could K.S.A. 2000 Supp. 66-118*l* be applied to make the final order on UNE prices effective February 19, 1999? As we find the answer to the second question dispositive, we will answer it first.

Under K.S.A. 2000 Supp. 66-118a(b), the Court of Appeals has exclusive jurisdiction to review any agency action of the Commission arising from a rate hearing requested by a public utility or requested by the Commission when a public utility is a necessary party. Pursuant to K.S.A. 66-118c, orders by the Commission are subject to review in accordance with the Act for Judicial Review and Civil Enforcement of Agency Actions, K.S.A. 77-601 *et seq.*

The applicable standard of review is set forth in K.S.A. 77-621. Under K.S.A. 77-621(a)(1), the burden of proving the invalidity of the Commission's action is on SWBT, the party asserting invalidity. *Citizens' Utility Ratepayer Bd. v. Kansas Corporation Comm'n*, 24 Kan. App. 2d 63, 67, 941 P.2d 424 (1997). SWBT argues pursuant to K.S.A. 77-621(c)(4) that the Commission has erroneously interpreted or applied the law.

The issue in this case is, when does an order of the Commission become effective? This in turn is controlled by how K.S.A. 2000 Supp. 66-118*l* is interpreted.

The interpretation of a statute by an administrative agency which is charged with the responsibility of enforcing that statute is generally entitled to judicial deference. If there is a rational basis for the agency's interpretation, it should be upheld on judicial review. If, however, the court finds that the agency's interpretation is erroneous as a matter of law, the court should take corrective steps. The decision of an administrative agency as to questions of law is not conclusive and, while persuasive, is not binding on the courts. *McTaggart v. Liberty Mut. Ins.*, 267 Kan. 641, 645, 983 P.2d 853 (1999).

It is a fundamental rule of statutory construction, to which all other rules are subordinate, that the intent of the legislature governs if that intent can be ascertained. *In re Marriage of Killman*, 264 Kan. 33, 42, 955 P.2d 1228 (1998). " ' "As a general rule, statutes are construed to avoid unreasonable results. [Citation omitted.] There is a presumption that the legislature does not intend

to enact useless or meaningless legislation. [Citation omitted.]' " [Citation omitted.]" *KPERS v. Reimer & Koger Assocs., Inc.*, 262 Kan. 635, 643, 941 P.2d 1321 (1997).

In February of 1999, when the Commission's order in question was issued, K.S.A. 66-118*l* read:

> "All orders or decisions of the commission shall become operative and effective 30 days after the service of the order or decision as provided by law, except that if a petition for reconsideration is filed, the order of decision shall become operative and effective 30 days after the order or decision of the commission denying the petition or if the petition be granted the order or decision as originally entered or as modified shall become operative and effective 30 days after the service of the order or decision of the commission on reconsideration."

On July 1 of 1999, pursuant to L. 1999, ch. 52 §2, the statute was amended to read:

> "All orders or decisions of the commission shall become operative and effective upon service of the order or decision, in accordance with the provisions of subsection (a) of K.S. 77-530 and amendments thereto, unless otherwise ordered by the commission or a stay is granted. The commission may grant a stay or suspend, in whole or in part, the operation of any order or decision of the commission in accordance with the provisions of K.S.A. 77-528 and amendments thereto. After the lapse of the time period in which judicial review of such order may be taken, such determinations and orders shall be held to be conclusive as to the matters involved in any suit to enforce such order or in any collateral suit or proceedings."

K.S.A. 77-530 reads:

> "(a) Unless a later date is stated in a final order or a stay is granted, a final order is effective upon service.
>
> "(b) Unless a later date is stated in an initial order or a stay is granted, an initial order shall become effective and shall become the final order: (1) When the initial order is served, if administrative review is unavailable; (2) when the agency head serves an order stating, after a petition for review has been filed, that review will not be exercised; or (3) 30 days after service if no party has filed a petition for review by the agency head, the agency head has not given written notice of its intention to exercise review and review by the agency head is not otherwise required by law.
>
> "(c) This section does not preclude a state agency from taking immediate action to protect the public interest in accordance with K.S.A. 77-536 and amendments thereto."

According to the Commission:

"K.S.A. 66-118*l*, as originally enacted, established when a valid Commission order would be final and non-appealable. The July 1, 1999, amendment clarified a Commission decision would be effective, unless stayed, and removed the 30-day lag before an order would be deemed final and non-appealable. This is a remedial change that clarified the procedural rights in matters before the Commission. The July 1, 1999 amendment did not create or abrogate any substantive right."

The Commission argues that the legislative history shows that the legislature intended for the statute to be procedural and to apply retroactively.

SWBT argues that there is no indication the legislature meant for the 1999 amendments to operate retroactively, and thus the statute must be construed to only operate prospectively. It also argues that the statute cannot be applied retroactively because it would adversely affect SWBT's substantive rights. The substantive rights SWBT is apparently referring to are interconnect agreements that contain true up provisions. According to SWBT, the Commission's order could create a liability for SWBT that would not exist but for the fact that the Commission's order was made effective on February 9, 1999. SWBT argues it has a vested interest in the nonrecurring prices for UNEs which were negotiated in the interconnect agreements with several CLECs and because the Commission's order alters those prices, it adversely affects SWBT's substantial rights.

The general rule is that statutes operate prospectively unless the language clearly indicates the legislature intended them to operate retrospectively. An exception to this rule has been recognized where a statutory change is procedural or remedial in nature. *In re Tax Appeal of Alsop Sand Co., Inc.*, 265 Kan. 510, 523-24, 962 P.2d 435 (1998). "When the legislature revises an existing law, it is presumed that the legislature intended to change the law as it existed prior to the amendment." *Hughes v. Inland Container Corp.*, 247 Kan. 407, 414, 799 P.2d 1011 (1990).

Procedural statutes generally concern the manner and order of conducting lawsuits, while substantive statutes establish the rights and duties of the parties. See *Ryco Packaging Corp. v. Chapelle*

*Int'l, Ltd.*, 23 Kan. App. 2d 30, 43, 926 P.2d 669 (1996), *rev. denied* 261 Kan. 1086 (1997). If an amendment to a procedural statute does not prejudice the substantive rights of a party, all actions generally will be subject to the new procedure whenever they accrued or were instituted. See *Rios v. Board of Public Utilities of Kansas City*, 256 Kan. 184, 191, 883 P.2d 1177 (1994). A remedial statute is legislation providing the means or method whereby causes of action may be effectuated, wrongs redressed, and relief obtained. Remedial legislation is liberally construed to effectuate the purpose for which it was enacted. *Midwest Properties v. Harvey*, 23 Kan. App. 2d 524, 526-27, 934 P.2d 154 (1997).

The difference between a procedural statute and a substantive statute is often difficult to discern, because a change in procedure can often significantly affect the outcome of a proceeding. The legislature can obviate the need for some judicial review on the question of prospective or retrospective analysis by clearly stating its intent in the statute or the legislative history. Without these indications, the courts must analyze a number of factors to try and divine legislative intent.

Substantive laws affect vested rights, and as such they are not subject to retrospective legislation which would constitute the taking of property without due process. See *Harding v. K.C. Wall Products, Inc.*, 250 Kan. 655, 668, 831 P.2d 958 (1992).

There is legislative history that supports the Commission's position.

The 1999 amendment to K.S.A. 66-118*l* was made in Senate Bill 123. In testimony before the Senate Utilities Committee, David J. Heineman, Executive Director of the Commission, presented testimony indicating the purpose behind amending K.S.A. 66-118*l* was to make it consistent with the provisions in Kansas Administration Procedures Act, K.S.A. 77-501 *et seq.*, and to prevent parties from delaying the effective date of an order by filing motions for reconsideration on the Commission's order on motions to reconsider. "The effective date of an order or decision can be further delayed by a party or intervener filing a motion for reconsideration and even longer, as the Commission is beginning to see more of, by the filing of a motion to reconsider the order on reconsidera-

tion." The testimony before the Senate Utilities Committees indicates that the intent of the change was to speed up the process and prevent a party from using procedural technicalities to delay Commission action. See Minutes of the Senate Utilities Committee, February 16 and 22, 1999.

From the above legislative history it is fairly clear that the 1999 amendment to K.S.A. 66-118*l* was meant to foreclose a situation like that which is presented here. It is procedural in that it only operates when an order becomes effective. The question remains whether it affects SWBT's substantive rights.

SWBT points to the September 1999 order which did two things: First, it ordered SWBT to rerun its cost studies relating to the UNEs and file those studies with the Commission, and, second, it ordered that, in the interim, the nonrecurring UNE costs established by interconnection agreements between SWBT and the CLECs or those in the February 19, 1999, pricing order would apply. SWBT argues that pursuant to the language in the September 1999 order, it became effective when served on the parties and, therefore, SWBT had a right to rely on those prices when negotiating interconnect agreements with the CLECs. As indicated above, SWBT argues it has a vested interest in the nonrecurring prices of UNEs negotiated in the interconnect agreements. Further, it claims, to the extent it is a party to interconnection agreements that contain true-up provisions, the retroactive application of the statute would create liabilities for SWBT that would not exist but for the Commission's actions.

SWBT's argument is somewhat inconsistent. On one hand it argues it had a right to rely on the Commission's orders of February and September 1999, as those orders were final, yet it also argues that the rates or prices established in this docket are not final until any motions to reconsider were ruled on. Thus the Commission could not order a "true up" of prices until after the decision, or lack thereof, on any motions to reconsider under K.S.A. 2000 Supp. 66-118*l*.

Substantive laws establish the rights and duties of parties. *In re Tax Grievance Application of Kaul*, 269 Kan. 181, 184, 4 P.3d 1170 (2000). Substantive laws have been described as laws which give

or define rights, laws which give rights or denounce wrongs, and laws which create any liability against a defendant for committing a tort. *Osborn v. Electric Corp. of Kansas City,* 23 Kan. App. 2d 868, 873, 936 P.2d 297, *rev. denied* 262 Kan. 962 (1997). "There is no vested right in any particular remedy or method of procedure." *Jones v. Garrett,* 192 Kan. 109, Syl. ¶ 6, 386 P.2d 194 (1963). " 'Vested rights' is a term that is used to describe rights that cannot be taken away by retroactive legislation. [Citation omitted.] Retroactive legislation affecting vested rights would constitute the taking of property without due process. [Citation omitted.]" *Gardner v. Gardner,* 22 Kan. App. 2d 314, 317, 916 P.2d 43, *rev. denied* 260 Kan. 992 (1996). However, a mere expectancy of future benefit, or a contingent interest in property founded on anticipated continuance of existing laws, does not constitute a vested right. The rule is particularly applicable to procedural changes in the law. *Gleason v. Samaritan Home,* 260 Kan. 970, 987, 926 P.2d 1349 (1996). See *State ex rel. Schneider v. Liggett,* 223 Kan. 610, 613, 576 P.2d 221 (1978).

From our review of the record it appears the Commission's order only affects those interconnection agreements between SWBT and the CLECs which have true-up provisions. "A 'true-up' is a payment made to offset the difference between an earlier estimated payment and actual costs." *Stow Municipal Electric Department v. Department of Public Utilities,* 426 Mass. 341, 350 n. 5, 688 N.E.2d 1337 (1997). Pursuant to 47 U.S.C. § 252(a) and (e), it appears that the Commission could not order those interconnection agreements which do not contain true-up provisions to be modified absent a finding that the agreement (or portion thereof) discriminates against a telecommunications carrier not a party to the agreement or that the implementation of such agreement or portion is not consistent with the public interest, convenience, and necessity. No such findings have been made in any of the Commission's orders. In the December 21, 2000, order on the petitions to reconsider, the Commission expressly noted that it did not have the authority to reform any negotiated agreement between SWBT and a CLEC *that did not contain a true-up provision.* Indeed, if the Commission could not order the prices effective to a prior date, we fail to see

the purpose of the true-up provision in any of the interconnection agreements.

It appears that SWBT's interests in the prices for nonrecurring UNEs as contained in the interconnection agreements would not be vested, since the true-up provision would necessitate that those prices be adjusted and amounts refunded, or additional amounts collected, depending on the final order of the Commission. Thus, the retroactive application of this procedural, remedial statute does not appear to prejudice any of SWBT's substantive rights.

As a subissue, SWBT argues that the Commission could not apply K.S.A. 2000 Supp. 66-118*l* retroactively because "even procedural statutes are not retroactively applied to proceedings that have already taken place," quoting *State v. Lieurance*, 14 Kan. App. 2d 87, 89, 782 P.2d 1246 (1989), *rev. denied* 246 Kan. 769 (1990). The answer to this claim is that the rates established in any order of the Commission are never "final," to the extent they cannot be modified, until the time for appellate review has expired. *Kansas Pipeline Partnership v. Kansas Corporation Comm'n*, 24 Kan. App. 2d 42, Syl. ¶ 6, 941 P.2d 390, *rev. denied* 262 Kan. 961 (1997).

We find, therefore, that the Commission did not err in its application of K.S.A. 2000 Supp. 66-118*l*. For this reason we need not reach the question of whether the Commission could make its order effective on a prior date under the statute as it read in February of 1999. We do note, however, that the decision in *Kansas Pipeline Partnership*, 24 Kan. App. 2d at 42, would appear to support the Commission's position.

Finally, SWBT argues the Commission's orders which made the prices for nonrecurring UNEs effective February 19, 1999, but made the effective date for recurring or monthly UNEs effective September 17, 1999, were unreasonable, arbitrary, and capricious. See K.S.A. 77-621(c)(8). It claims the Commission's actions were unreasonable because it accords disparate treatment between recurring and nonrecurring UNE rates.

The Commission responds that this issue was not properly preserved for appeal because it was not included in SWBT's petition to reconsider.

The Commission is correct. Nothing in SWBT's motion to reconsider the December 21, 2000, order argues that the different effective dates for recurring and nonrecurring charges were somehow unreasonable, arbitrary, or capricious. From a review of all the orders and SWBT motions to reconsider filed subsequent to September 17, 1999, SWBT has not, prior to the argument in its appellant's brief, argued that setting different effective dates for recurring versus nonrecurring UNE costs and prices was unreasonable, arbitrary, or capricious. "Any ground not set forth in the application for rehearing cannot be relied upon in judicial review proceedings." *Peoples Natural Gas v. Kansas Corporation Commission*, 7 Kan. App. 2d 519, 526, 644 P.2d 999, *rev. denied* 231 Kan. 801 (1982). SWBT's failure to raise this issue in its motion to reconsider bars it from raising it here. In any event, we see no basis for the argument based on the record before us.

Affirmed.