No. 89,476

OWEN LUMBER COMPANY, *Appellant*, v. ARTHUR CHARTRAND, *et al.*, *Appellees.*

(73 P.3d 753)

Opinion filed August 1, 2003.

*Michael P. Bandre*, of Crouch, Spangler & Douglas, of Harrisonville, Missouri, argued the cause and was on the briefs for appellant.

*Arthur J. Chartrand*, of Olathe, was on the brief for appellees.

The opinion of the court was delivered by

LUCKERT, J.: This case is an action to foreclose a mechanic's lien of a subcontractor, Owen Lumber Company, against property owned by Arthur and Carol Chartrand. The action was filed prior to the effective date of amendments to K.S.A. 60-1103 passed by the 2000 legislature. (L. 2000, ch. 175, sec. 7.) The district court ruled that the amendments to K.S.A. 60-1103(c) applied retrospectively to this case so that Owen Lumber's failure to serve a copy of the lien statement on the Chartrands as equitable owners precluded it from foreclosing its mechanic's lien. Owen Lumber timely appealed. The case was transferred to this court on the court's own motion pursuant to K.S.A. 20-3018.

We reverse.

## FACTS

In December 1994, Arthur and Carol Chartrand contracted with

Design Build Group, Inc., (Design Build) for the construction of a new home. Owen Lumber, a subcontractor, supplied some of the building materials to Design Build for the home. Because of concerns about the contractor's plans for the property, the Chartrands filed a notice of equitable interest with the Johnson County Registrar of Deeds on December 28, 1995. Owen Lumber filed a mechanic's lien on the home on January 5, 1996. Owen Lumber gave notice of the lien to Design Build as the legal owner but did not give notice to the Chartrands.

Before taking title, the Chartrands received a title report showing that numerous mechanic's liens had been filed against the property, including the lien filed by Owen Lumber. Mr. Chartrand personally reviewed Owen Lumber's mechanic's lien. The Chartrands took title to the real estate by a quitclaim deed from Design Build filed on February 5, 1996.

In January 1997, Owen Lumber filed an action to foreclose its lien. The district court granted summary judgment in favor of the Chartrands because Owen Lumber had failed to file a notice of intent to perform as required by K.S.A. 2002 Supp. 60-1103b and had failed to comply with the notice provisions of K.S.A. 60-1103(c).

The Court of Appeals reversed on both issues, and this court affirmed the Court of Appeals' decision. *Owen Lumber Co. v. Arthur Chartrand*, 27 Kan. App. 2d 72, 998 P.2d 509, *aff'd* 270 Kan. 215, 14 P.3d 395 (2000) (*Chartrand I*). This court ruled that Owen Lumber was not required to file a notice of intent to perform pursuant to K.S.A. 60-1103(a)(3) and K.S.A. 2002 Supp. 60-1103b(b) because it filed the actual lien before the Chartrands took legal title to the property. 270 Kan. at 219-21. Regarding the application of K.S.A. 60-1103(c), this court ruled that the statute's requirement of service of a mechanic's lien on "any one owner" of the property was satisfied when Owen Lumber notified Design Build, the legal owner of the property, of the lien. The statute did not require that Owen Lumber also notify the Chartrands, the equitable owners of the property. 270 Kan. at 226.

After the Court of Appeals' decision, but before this court granted review, the legislature passed 2000 H.B. 2905 amending

K.S.A. 60-1103(c) to require notice to the holder of a recorded equitable interest. The bill stated that the amendments were to take effect "[o]n the date of the issuance by the Kansas supreme court of an opinion in the case of *Owen Lumber Company vs. Chartrand*, case no. 82,228, which affirms the decision of the Kansas court of appeals or on the date the Kansas supreme court denies the petition for review." L. 2000, ch. 175, sec. 7. This court issued its opinion affirming the Court of Appeals on December 8, 2000; therefore, the statutory amendments took effect on that date.

On remand, the district court found that the 2000 amendments to K.S.A. 60-1103(c) applied retrospectively and that, because Owen Lumber had failed to serve notice of its lien upon the Chartrands, it was precluded from foreclosing its lien.

## PROSPECTIVE OR RETROSPECTIVE
## APPLICATION OF AMENDMENTS

2000 H.B. 2905 amended K.S.A. 60-1103(c) as follows:

"(c) Recording and notice. When a lien is filed pursuant to this section, the clerk of the district court shall enter the filing in the general index. The claimant shall (1) cause a copy of the lien statement to be served personally upon any one owner, *any holder of a recorded equitable interest* and any party obligated to pay the lien in the manner provided by K.S.A. 60-304, and amendments thereto. . . (2) mail a copy of the lien statement to any one owner of the property, *any holder of a recorded equitable interest* and to any party obligated to pay the same by restricted mail or (3) if the address of any one owner or such party is unknown and cannot be ascertained with reasonable diligence, post a copy of the lien statement in a conspicuous place on the premises. The provisions of this subsection requiring that the claimant serve a copy of the lien statement shall be deemed to have been complied with, if it is proven that the person to be served actually received a copy of the lien statement. *No action to foreclose any lien may proceed or be entered against residential real property in this state unless the holder of a recorded equitable interest was served with notice in accordance with the provisions of this subsection.*" (Emphases noting amendments.) L. 2000, ch. 175, sec. 7.

In determining whether the provisions of any statute apply prospectively or retrospectively, the general rule is that a statute operates prospectively unless there is clear language indicating that the legislature intended it to operate retrospectively. *In re Tax Appeal of Alsop Sand Co., Inc.*, 265 Kan. 510, 523-24, 962 P.2d 435 (1998). Even where the legislative intent is clear, courts must

still consider whether retrospective application of legislation will affect vested or substantive rights. See *Southwestern Bell Tel. Co. v. Kansas Corporation Comm'n*, 29 Kan. App. 2d 414, 422, 29 P.3d 424 (2001) (legislative intent was clear that procedural amendment was to apply retrospectively, but question remained whether amendment affected substantive rights).

In this case, the legislature clearly indicated its intent that the amendments were intended to apply to foreclosure actions pending at the time the amendments became effective, including the case at bar, by stating that no action to foreclose a lien "may proceed" unless notice has been served as required by the subsection. Owen Lumber does not dispute that this was the clear intent.

The more difficult question is whether such retrospective application affects a vested or substantive right and thereby violates the due process provisions of the United States and Kansas Constitutions. The determination of whether a statute affects a "vested right" is rarely straightforward. As Justice Six, writing for this court, previously noted:

"One commentator has aptly noted: '[I]t has long been recognized that the term "vested right" is conclusory—a right is vested when it has been so far perfected that it cannot be taken away by statute.' Hochman, *The Supreme Court and the Constitutionality of Retroactive Legislation*, 73 Harv. L. Rev. 692, 696 (1960). Numerous authorities have recognized inconsistencies in the use of the term 'vested rights' in the context of retroactive legislation, and some have questioned the wisdom of a vested rights analysis. See *Phillips v. Curiale*, 128 N.J. 608, 621, 608 A.2d 895 (1992) (' "[D]iscerning commentators and judges" have questioned the value of vested rights analysis.'); *Peterson v. City of Minneapolis*, 285 Minn. 282, 287, 173 N.W.2d 353 (1969) ('[R]etroactive laws . . . are usually upheld as long as they do not interfere with *vested* legal rights. The rule itself seems simple enough, but the difficulty comes in defining what is a vested right.').

"We, too, find the 'vested rights' area of the law to be murky. Courts and litigants sometimes rely on broad pronouncements that a particular right is or is not a 'vested right,' without careful scrutiny of the facts underlying the cases cited in support of the conclusion. As explained below, the analysis of whether a right is 'vested' may include considerations other than merely the nature of the right as 'property.' Separating the ultimate due process analysis from the 'vested rights' inquiry is virtually impossible under the cases we have reviewed." *Resolution Trust Corp. v. Fleischer*, 257 Kan. 360, 364-65, 892 P.2d 497 (1995).

The issue in *Fleischer* was whether the holder of an accrued tort action, which had not been reduced to judgment, had a vested property right in the cause of action. The court held that, under the facts of the case, the answer was " 'yes,' as qualified by our analysis." 257 Kan. at 374. The analysis reaching that conclusion was lengthy, but in part, stated:

"Reviewing 'vested rights' cases requires a look beyond the labels to the ingredients which shaped the courts' conclusions. Important factors are: (1) the nature of the rights at stake (*e.g.*, procedural, substantive, remedial), (2) how the rights were affected (*e.g.*, were the rights partially or completely abolished by the legislation; was any substitute remedy provided), and (3) the nature and strength of the public interest furthered by the legislation. See Hochman, 73 Harv. L. Rev. at 697. Although, as one court has noted, these factors 'are as nebulous as the term itself,' *Peterson*, 285 Minn. at 288, they nonetheless help explain why courts have reached what, on the surface, appear to be conflicting conclusions about whether particular rights are 'vested rights,' immune from retroactive legislation. Several courts have incorporated Hochman's factors or similar ones into tests for the constitutionality of retroactive legislation. See [*Jefferson Disposal Co. v. Parish of Jefferson, LA.*, 603 F. Supp. 1125, 1136 (E.D. La. 1985)]; *Phillips*, 128 N.J. at 621; *Peterson*, 285 Minn. at 288." *Fleischer*, 257 Kan. at 369.

The district court determined, and the Chartrands now argue, that a mechanic's lien is a remedy and the general rule is that there are no vested rights in a particular remedy or method of procedure. In support of this determination, the district court cited *Nitchals v. Williams*, 225 Kan. 285, 590 P.2d 582 (1979). Although stating this general rule, this court in *Nitchals* also stated, as we have on many occasions, that a statute which affects a remedy may be applied retrospectively only if it "does not prejudicially affect the substantive rights of the parties." 225 Kan. at 291. In another case, the general rule was stated as allowing retrospective application of a statute that is "merely procedural or remedial in nature and is not prejudicial to the parties." *In re Tax Appeal of Alsop Sand Co.*, 265 Kan. 510, Syl. ¶ 3. In other cases stating the general rule regarding procedural and remedial statutes, we have stated a statute will be given retrospective application "only if such [retrospective application] will not affect a *vested right* of a party." (Emphasis added.) *Stevenson v. Topeka City Council*, 245 Kan. 425, Syl. ¶ 2, 781 P.2d 689 (1989).

Thus, while the distinction between procedural, remedial, and substantive laws is an important part of the analysis and a distinction we continue to draw (*Fleischer*, 257 Kan. at 366-68), our analysis does not end there. As stated by one commentator:

"[T]his formulation of the rule [that the legislature may modify the remedies for the assertion or enforcement of a right], in addition to ignoring the other factors relevant in determining the constitutionality of a particular statute, is an oversimplification of the manner in which the [United States Supreme] Court weighs a statute's effect on previously acquired rights. The Court has recognized that the removal of all or a substantial part of the remedies for enforcing a private contract may have the same practical effect as an explicit denial of the right. Thus the relevant factor in determining the weight to be given to the extent to which a preexisting right is abrogated is not whether the statute abolishes rights or remedies, but rather the degree to which the statute alters the legal incidents of a claim arising from a preenactment transaction; the greater the alteration of these legal incidents, the weaker is the case for the constitutionality of the statute." Hochman, *The Supreme Court and the Constitutionality of Retroactive Legislation*, 73 Harv. L. Rev. 692, 711-12 (1960).

These conclusions reflect the case law in this state as well. In many cases, statutes have been deemed procedural, "in other words, the mode of proceeding to enforce legal rights" (*Stevenson*, 245 Kan. at 427), and this court has allowed retrospective application, citing the general rule that procedural and remedial statutes apply retrospectively. Examples include the cases cited by Justice Six in *Fleischer* for the proposition that "[w]e continue to recognize a distinction between procedural and substantive laws when the question is whether such laws can be applied retroactively without impairing vested rights." 257 Kan. at 368. See *Rios v. Board of Public Utilities of Kansas City*, 256 Kan. 184, 191-92, 883 P.2d 1177 (1994) (retrospective application of statute transferring review of award from district court to Workers Compensation Board); *Board of Greenwood County Comm'rs v. Nadel*, 228 Kan. 469, 618 P.2d 778 (1980) (right to appeal by county tax officials applied to pending litigation); *Harding v. K.C. Wall Products, Inc.*, 250 Kan. 655, 831 P.2d 958 (1992) (distinguishing between statute of repose as substantive and statute of limitations as procedural; determining defendant had no vested right in statute of limitations).

Another example, more closely on point is *Kopp's Rug Co. v. Talbot*, 5 Kan. App. 2d 565, 620 P.2d 1167 (1980). In that case, the court considered whether to give retrospective application to an amendment to K.S.A. 60-1103 which provided that notice is deemed to have been given if it is proved that the person to be served actually received a copy of the lien statement. Previously, the statute had required personal service or service by restricted or certified mail. The lien notice was mailed, and admittedly received, but with only the requirement of "return receipt requested" without including the phrase "showing address where delivered." The court deemed the amendment procedural only and applied it retrospectively. 5 Kan. App. 2d at 568. The court compared the sending of the lien notice to service of process and quoted a service of process case in which this court distinguished the procedural aspect from the substantive right, stating: " 'The right of action exists when a person or his property is injured or damaged . . . . Plaintiff's right of action came into existence when he was injured. Process is no part of the cause of action.' " 5 Kan. App. 2d at 570 (quoting *Jones v. Garrett*, 192 Kan. 109, 115, 386 P.2d 194 [1963]).

However, different results have occurred where the procedure affects a right which has vested. The contrast is illustrated by comparing *Nitchals*, the case cited by the district court, with cases distinguishing *Nitchals*. At issue in *Nitchals* was the assessment of attorney fees under a new statutory provision which required the district court to fix attorney fees to be paid proportionately by the insurer and the insured. This court held "statutory changes allowing the recovery of attorney fees and expenses of litigation are procedural or remedial in nature and, therefore, may be applied retrospectively to pending cases." 225 Kan. at 292.

However, *Ryco Packaging Corp. v. Chapelle International*, 23 Kan. App. 2d 30, 926 P.2d 669 (1996), *rev. denied* 261 Kan. 1086 (1997), and *Baxter State Bank v. Bernhardt*, 985 F. Supp. 1259 (D. Kan. 1997) (applying Kansas law), distinguished *Nitchals*. Both cases dealt with contracts executed when K.S.A. 58-2312 made it unlawful to contract for the payment of attorney fees in any note, bill of exchange, bond, or mortgage. Amendments to the statute

later allowed payment of reasonable costs of collection, including attorney fees. Relying upon *Nitchals*, lenders sought attorney fees under the amendments. The Court of Appeals distinguished *Nitchals*, noting the "rights were not vested at the time of the amendments." 23 Kan. App. 2d at 45. In contrast, the *Ryco* guarantors had executed contracts at a time when attorney fees could not be assessed and the principals had defaulted before the amendments became effective. The court concluded the amendments could not be applied retrospectively. In *Bernhardt*, the federal district court agreed and predicted that this court would also. 985 F. Supp. at 1271.

Additional examples could be cited which lead to the conclusion that, while we have applied the general rule that a legislature may retrospectively modify the remedies by which rights are enforced, we have not done so when the modification has the practical effect of abrogating the right. In other words, without specifically articulating so, even in the situation of remedial or procedural statutes, Kansas appellate courts have looked beyond the nature of the statute (procedural, remedial, or substantive) and examined how the rights were affected, whether there was a substitute remedy, and the public interest furthered by the legislation.

An example largely on point with this case is *Groesbeck v. Barger*, 1 Kan. App. 61, 41 Pac. 204 (1895). In that case, subcontractors supplied materials for the erection of a building. Under the statute in effect at the time the materials were furnished, the subcontractors were required to file a verified statement within 60 days after the completion of the building and to serve a copy on the owners. After the materials had been furnished, but before the subcontractors filed their statement of a lien claim, a new statute took effect which required the statement to be filed within 60 days after the date the materials were last furnished. Written notice of such filing had to be given to the owner.

The court ruled that the subcontractors' right to a lien became vested at the time the materials were furnished and it was not in the power of the legislature to destroy that right. The court stated that the right to the lien must be determined by the law in effect at the time the right becomes vested but the lien must be estab-

lished, preserved, and enforced by the law in effect at the time proceedings are had for that purpose. The court explained that the requirements regarding the filing of the lien statement and notice to the owners were steps essential to preserve and enforce the lien, and these provisions were classed as "remedies" to be pursued by the lien claimant for the enforcement of his lien. The court designated the changes in law as "changes in the remedy which the legislature had a right to make." 1 Kan. App. at 62-63.

Because the subcontractors failed to file their lien statement within 60 days after the date the material was last furnished, as required by the new statute, their lien could not be enforced. Importantly, the court noted:

"The plaintiff must, of course, be given a reasonable time after the new act took effect within which to comply with its provisions; but such reasonable time can in no case be for a longer time after the act took effect than that given by the statute after the furnishing of materials." 1 Kan. App. at 64.

The concept of allowing a reasonable time to comply with new procedures was also discussed in *Bailey v. Baldwin City*, 119 Kan. 605, 240 Pac. 852 (1925). In *Bailey*, the plaintiff was injured on May 23, 1922, and provided notice of his claim to the city on December 5, 1923. A few weeks later, a statute was enacted requiring such notice to be provided within 3 months of injury before an action could be maintained against the city. The *Bailey* court found that the notice statute could operate only prospectively. The court stated:

"The legislature had the power to fix conditions precedent to the maintenance of an action against the city but a restrictive condition which did not allow a party reasonable time after the enactment to bring an action for the enforcement of an existing right or to make compliance with prescribed conditions would be invalid." 119 Kan. at 607.

In a more recent case, *Stevenson*, this court relied in part upon *Bailey* in refusing to apply an amended notice statute retrospectively. 245 Kan. at 429-30. Stevenson would have had only 23 days to comply with the amended notice statute before her claim was barred. The court held: "A procedural statute will not be given retrospective application where a party does not have a reasonable

time after the enactment of the statute to comply with notice requirements before the suit is barred." 245 Kan. 425, Syl. ¶ 4. The court found that 23 days was not a reasonable time to comply with the amended statute. 245 Kan. at 430.

In each of these cases, without articulating the considerations, we have balanced the factors articulated in *Fleischer* by weighing the remedial or procedural nature of the statute against the determination of how rights were affected and whether any substitute remedy was provided. See *Fleischer*, 257 Kan. at 369.

Applying the same analysis in this case, we look to our statements regarding the enforcement of a mechanic's lien. While a mechanic's lien is remedial in nature, we have found that, because the statute is "designed for the benefit and protection of persons designated by the act, once a lien has been found to have attached, the law is to be liberally construed in favor of the claimant. [Citation omitted.]" *Haz-Mat Response, Inc. v. Certified Waste Services Ltd.*, 259 Kan. 166, 170, 910 P.2d 839 (1996). In this case, the lien had attached and suit had been filed. On the other hand, foreclosure of the mechanic's lien was but one remedy aimed at the ultimate cause of action, collection of the money Design Build owed Owen Lumber. The availability of an alternative remedy distinguishes this case from *Bailey* and *Stevenson*. This must be weighed, however, in light of the policy behind mechanic's liens: "The theory underlying the granting of a lien against the property is that the property improved by the labor, equipment, material, or supplies should be charged with the payment of the labor, equipment, material, or supplies." 259 Kan. at 170.

Along with these considerations, we must weigh our previous holding that Owen Lumber had complied with the statutes in effect at the time of filing its lien and this foreclosure action. Notice to the Chartrands as equitable interest holders was not then required. *Chartrand I*, 270 Kan. at 226.

Given these considerations, we hold that, under the facts of this case, where a mechanic's lienholder had complied with the notice requirements in existence at the time it filed the action to foreclose its lien, it would violate due process to retrospectively apply the

amendments contained in K.S.A. 2002 Supp. 60-1103(c) to require that this action be dismissed.

As has been discussed, there is precedent for holding that the new provisions do not retrospectively apply or for allowing a specified amount of time in which to comply with the new provisions. When considering which option to adopt in this case, several factors weigh toward requiring compliance with the new notice provisions within a reasonable time. First, when considering a lien, strict compliance with the statutory procedures is generally required. *Jones v. Lustig,* 185 Kan. 208, 210, 341 P.2d 1018 (1959). Furthermore, many defenses depend upon the specifics of the lien statement. Finally, the amendments express a legislative intent and directive that no action proceed without compliance. We hold that Owen Lumber must comply with the additional notice requirements.

However, the amendments do not give a party to pending litigation a reasonable time to comply with the new notice requirement. We, therefore, will follow the precedent of *Groesbeck,* 1 Kan. App. 61, and read into the statute a reasonable time for compliance. Owen Lumber should serve the lien statement in the manner required within 60 days of the date of the mandate in this case.

## ACTUAL NOTICE

Owen Lumber's second argument on appeal is that the new provisions have already been satisfied. Owen Lumber argues that the district court erred in ruling that it had failed to comply with K.S.A. 2002 Supp. 60-1103(c) when the Chartrands admitted they had actual knowledge of and had reviewed the mechanic's lien filed by Owen Lumber prior to accepting a quitclaim deed to the property. Specifically, Owen Lumber relies upon the following portion of K.S.A. 2002 Supp. 60-1103(c) enacted in 1978: "The provisions of this subsection requiring that the claimant serve a copy of the lien statement shall be deemed to have been complied with, if it is proven that the person to be served actually received a copy of the lien statement." L. 1978, ch. 230, sec. 3.

The Chartrands respond that the legal theory of actual knowledge was never presented to the district court and is not an issue

in this appeal. They contend that actual knowledge does not satisfy the statute where no notice was ever sent and that a ruling that actual knowledge does satisfy the statute would only punish the owner for his or her diligence in reviewing the title records.

Although it appears Owen Lumber did not specifically raise this issue before the district court on remand, it did raise the issue during the summary judgment proceedings which preceded the first appeal. At that time, the district court stated:

"There is a proviso at the end of the statute that says that the provisions of that subsection requiring service will be deemed to have been complied with if it is proven that the person to be served actually received a copy of the lien statement.

"In this case, after doing a title search, Mr. Chartrand did at least review a copy of the lien statement as filed with the District Court Clerk. However, I do not believe that that constitutes compliance with the statutory notice provision.

"The provision that I've just quoted at the end of the statute is designed to obviate a failure to serve the notice in the manner provided by the statute. The statute requires service in compliance with K.S.A. 60-304. If service is made by a party but fails to comply with K.S.A. 60-304, that proviso at the end can save the lien claimant when actual notice has in fact occurred.

"In this case, no attempt of any kind to serve that lien claim was made upon the Chartrands. Accordingly, the proviso at the end does not save the lien claimant. Since no notice was even attempted to be provided and no service of notice was attempted to be provided, there is no saving by that last sentence in the statute."

In the first appeal, Owen Lumber argued that the district court erred in making this ruling. However, neither appellate court specifically addressed the issue, ruling instead that the statute did not require notice to the Chartrands at all. *Chartrand I*, 27 Kan. App. 2d at 77; 270 Kan. at 226, 228. Both courts did find that Design Build received actual notice, but did not address whether the Chartrands received actual notice. 27 Kan. App. 2d at 77; 270 Kan. at 227.

Because this argument has been presented to the district court (albeit not during proceedings on remand) and because Owen Lumber has previously sought review of the issue on appeal, the usual prohibition against raising an issue for the first time on appeal is not applicable. Furthermore, because this argument does not directly involve the 2000 amendments to the statute, there is no

reason to believe the district court would have ruled any differently had Owen Lumber repeated its argument on remand. In any event, the district court's reasoning is sound.

Actual notice or knowledge is different from actual receipt of a copy of the lien statement. There is no allegation and no evidence that Owen Lumber ever attempted to serve a copy of the lien statement upon the Chartrands or mail a copy to them by restricted mail. The statutory provision cited by Owen Lumber appears to apply to a situation where an improper method of service or mailing was used, but the owners actually received a copy of the lien statement anyway. See *Kopp's Rug Co.*, 5 Kan. App. 2d at 567 (lien statements sent by certified mail rather than restricted mail as required by statute; homeowners stipulated to actual receipt).

Owen Lumber complains that the district court referred only to the lack of personal service on the Chartrands and points out that the statute allows for either personal service or service by restricted mail. This is irrelevant since Owen Lumber did not attempt either kind of service.

Owen Lumber also points out that the purpose of requiring service of notice of the lien is "to advise the owner of the property of the existence of the lien, afford him opportunity to investigate the claim and determine its validity and to avoid paying the same account twice." *Schwaller Lumber Co., Inc. v. Watson*, 211 Kan. 141, 145, 505 P.2d 640 (1973). Here, the Chartrands had knowledge through Mr. Chartrand's search of records and from the title insurance report. This argument ignores the fact that strict compliance with the notice statute is required. "Since the mechanic's lien is purely a statutory creation, only strict compliance with the provisions in the statute will give rise to an enforceable lien." *Scott v. Strickland*, 10 Kan. App. 2d 14, 20, 691 P.2d 45 (1984) (citing *Kopp's Rug Co.*, 5 Kan. App. 2d at 567).

Therefore, we hold that there has not been strict compliance, but as stated earlier, Owen Lumber must be given a reasonable opportunity to comply with the amendments.

Reversed and remanded.

ABBOTT and GERNON, JJ., not participating.

LARSON, S.J., and BRAZIL, S.J., assigned.