(220 P.3d 1105)
No. 100,999

STATE OF KANSAS, *ex rel.* STEVEN N. SIX, ATTORNEY GENERAL (BOARD OF COUNTY COMMISSIONERS OF SHAWNEE COUNTY, KANSAS), *Appellee*, v. MIKE W. GRAHAM & ASSOCIATES, LLC, and WEST LAWN MEMORIAL GARDENS, LLC, *et al., Defendants*, and CHARLES HEINSOHN, *Appellant*.

Opinion filed December 4, 2009.

*Thomas W. Harris*, of Roeland Park, for appellant.

*Shawn S. Leisinger*, assistant county counselor, and *Richard V. Eckert*, county counselor, for appellee.

Before GREENE, P.J., MCANANY, J., and LARSON, S.J.

GREENE, J.: Charles Heinsohn, judgment creditor of the former owner of West Lawn Memorial Gardens Cemetery in Shawnee County, appeals the district court's order dismissing his attempt to enforce his judgment lien against cemetery assets, arguing the statute relied on by the district court, K.S.A. 2008 Supp. 17-1367, was unconstitutionally applied to defeat his judgment lien. Concluding the legislative amendment to the statute, which purported to retroactively nullify judgment liens against cemetery property, was violative of due process and unconstitutionally applied to defeat Heinsohn's claim, we reverse and remand for further proceedings.

## *Factual and Procedural Background*

In May 2005, the State filed a petition to dissolve West Lawn Memorial Gardens, Inc., to declare the corporation's cemetery property in Shawnee County as abandoned, and to transfer title of all personal and real property of the corporation to Shawnee County pursuant to K.S.A. 17-1367. In late June 2005, the State sought and received a temporary restraining order against Mike W. Graham & Associates, LLC, and West Lawn Memorial Gardens, Inc., concluding that these defendants had engaged in unconscionable acts violative of the Kansas Consumer Protection Act and violative of the Cemetery Corporation Act and the Prearranged Funeral Act. The order sequestered all assets, funds, or property of the defendants, pursuant to the Consumer Protection Act, K.S.A. 50-632, and transferred these assets to the treasurer of Shawnee County as receiver. The order also directed the appointment of Heinsohn and his wife as caretakers of the cemetery property.

In late 2005, Heinsohn obtained a judgment against Mike W. Graham and Associates, LLC, d/b/a/ West Lawn Memorial Gardens, for $45,717.15 plus interest and costs, based on his work in the general upkeep and maintenance of the cemetery property, including grave opening and closing, at West Lawn Memorial Gardens' cemeteries in both Topeka and Lawrence. The decision awarding the judgment found that Heinsohn "has not been fully paid for his considerable efforts." It is not clear from the record, but was conceded at oral argument, that a portion of Heinsohn's work giving rise to the judgment was performed after entry of the temporary restraining order directing his appointment as caretaker. This judgment was later clarified to include as additional defendants and judgment debtors West Lawn Memorial Gardens, LLC, and Lawrence Memorial Park Cemetery, LLC.

After procuring his judgment, Heinsohn sought to intervene in the dissolution action pending between the State and his judgment debtors. His intervention sought authority to issue execution upon the assets of his judgment debtors, including separate tracts or parcels owned by the cemetery corporation containing a residential structure, a barn, a pet cemetery, and a hay meadow; he agreed

not to pursue human burial grounds—both sold and unsold burial lots. After an order permitting Heinsohn's intervention, the legislature amended the operative statute to retroactively nullify judgment liens, and the State and the defendants then entered into a consent judgment declaring the cemetery property abandoned and purporting to transfer all assets of the defendants to Shawnee County "free and clear" of all mortgages, liens, judgments, and any other encumbrances, pursuant to K.S.A. 2008 Supp. 17-1367. The State then moved to dismiss all remaining claims and liens against the defendants, but Heinsohn objected to the dismissal of his claim.

The district court cited the amended version of K.S.A. 17-1367 and summarily dismissed all other claims—including Heinsohn's—and ordered the County take the cemetery property with no liens attached, pursuant to K.S.A. 2008 Supp. 17-1367.

Heinsohn appeals.

### *Did the District Court Err in Dismissing Heinsohn's Claim Pursuant to K.S.A. 2008 Supp. 17-1367 or Was That Statute Unconstitutionally Applied to Defeat His Claim?*

Heinsohn argues that K.S.A. 2008 Supp. 17-1367 was unconstitutionally applied to defeat his claim, principally because the 2008 amendment to this statute was retroactively applied in violation of due process of law. When the application of a statute is challenged on constitutional grounds, we exercise de novo review. *State v. Myers*, 260 Kan. 669, 676, 923 P.2d 1024 (1996), *cert. denied* 521 U.S. 1118 (1997). A statute is not unconstitutional as applied unless it is clear beyond a substantial or reasonable doubt that the statute infringes on constitutionally protected rights. *State v. Cook*, 286 Kan. 766, 768, 187 P.3d 1283 (2008) (employing reasonable doubt standard); *State v. Wilkinson*, 269 Kan. 603, 606, 9 P.3d 1 (2000) (employing substantial doubt standard). The constitutionality of a statute is presumed, and the court must resolve all doubts in favor of its validity. It is the court's duty to uphold a statute under attack, if possible, rather than defeat it, and if there is any reasonable way to construe the statute as constitutionally valid, that should be

done. *In re Tax Appeal of Garden City Medical Clinic*, 36 Kan. App. 2d 114, 117, 137 P.3d 1058 (2006).

At the outset, we note that all real and personal property of the judgment debtor was initially sequestered and transferred to a receiver pursuant to K.S.A. 50-632, and only later was the property ordered held pursuant to K.S.A. 2008 Supp. 17-1367, but we have made no attempt to analyze Heinsohn's rights under Chapter 50 because this issue was apparently never raised in district court, nor is it asserted on appeal. Consequently, we restrict our analysis of Heinsohn's claims to Chapter 17 and express no opinion whether the analysis might differ under Chapter 50 during the time the property was held pursuant to that statutory scheme.

### *Overview of the Statutory Scheme and the 2008 Amendment Thereto*

Prior to its amendment by the 2008 Kansas Legislature, K.S.A. 17-1367 provided as follows:

"Whenever the attorney general determines the existence of an abandoned cemetery in this state, the attorney general shall immediately proceed to dissolve the cemetery corporation owning the same. Upon the dissolution of such corporation, title to all property owned by the cemetery corporation shall vest in the municipality in which the cemetery is located, and the permanent maintenance fund, together with all investments then outstanding, and all books, records and papers of such corporation shall be transferred to the treasurer of such municipality and shall become the property thereof."

Although we find little evidence in the record on appeal of the circumstances surrounding the 2008 amendment to this statute, Heinsohn claims that Shawnee County played a pivotal role in urging the amendment due to his pending claim. In any event, the amended version of the statute provides as follows:

"Whenever the attorney general determines the existence of an abandoned cemetery in this state, the attorney general shall immediately proceed to dissolve the cemetery corporation owning the same. Upon the dissolution of such corporation, title to all property owned by the cemetery corporation shall vest in the municipality in which the cemetery is located, *and any liens, perfected or unperfected, against such property shall be immediately quashed, null and void and unenforceable on and after January 1, 2003,* and the permanent maintenance fund, together with all investments then outstanding, and all books, records and

papers of such corporation shall be transferred to the treasurer of such municipality and shall become the property thereof. Upon the transfer of such property and funds, the governing body of such municipality shall care for and maintain such cemetery with any moneys of the cemetery corporation including the principal of and income from the permanent maintenance fund and, if such moneys are insufficient to properly maintain such cemetery, with funds of the municipality. The principal of and income from the permanent maintenance fund may be deposited in any appropriate fund of the municipality or may be invested in the manner provided in K.S.A. 17-1311, *and amendments thereto*, but shall be used exclusively for care and maintenance of such cemetery." (Amended portion emphasized.) L. 2008, ch. 109 sec. 38.

The Supplemental Note on House Bill 2935 states that "Shawn Leisinger, Assistant Shawnee County Counselor, testified in support of the bill, and Sue Hack, Mayor of Lawrence, submitted written testimony in support of the bill. Both municipalities are in the process of assuming responsibility for abandoned cemeteries." The brief, prepared by the Legislative Research Department and not expressing legislative intent, states that "HB 2935 would amend existing law to void all liens on abandoned cemeteries for which the title has been vested in the municipality where the cemetery is located, pursuant to K.S.A. 17-1367. The bill would void existing liens on such property on and after January 1, 2003."

## The District Court's Memorandum Opinion

Following the 2008 amendment to K.S.A. 17-1367, the district court dismissed Heinsohn's claims, providing the following reasoning:

"House Bill 2217 amends K.S.A. 17-1367, which governs the disposition of abandoned cemeteries. House Bill 2217 adds language to the statute that is directly on point with the issue presented in this case. The amended portion states that 'any liens, perfected or unperfected, against such property shall be immediately quashed, null and void and unenforceable on and after January 1, 2003.' House Bill 2217 was signed by the Kansas Governor while the lawsuit between the State of Kansas and the owners of the abandoned Westlawn Memorial Gardens Cemetery was active. The lawsuit was settled, which resulted in the cemetery owners transferring ownership of the property to Shawnee County.

"Intervenor Heinsohn argues that the amended Bill is not applicable to this case because the amended portion cannot be applied retroactively. He also argues that the Bill was not signed until the case had already begun; therefore, the pre-

amended statute should govern. According to *Bulger v. West*, 155 Kan. 426, 430 [, 125 P.2d 404] (1942):

> 'The general rule is that a statute is operative only in the future from the time it is enacted and made effective; that it has no retroactive effect unless the language of the statute clearly indicates the legislature so intended it.'

"The amended portion of House Bill 2217 was intended to operate retroactively. The statutory language written by the Kansas Legislature establishes that any liens will be unenforceable after January 1, 2003. This change in the statute removes any remaining liens still attached to the cemetery property."

## Constitutional Analysis of the Statute as Amended

Cemetery property in Kansas enjoys a unique status and is not subject to the laws of ordinary property. *State ex rel. Stephan v. Lane*, 228 Kan. 379, 386, 614 P.2d 987 (1980). A cemetery corporation is organized for a public rather than private purpose, and the cemetery management is in the nature of a trust. 228 Kan. at 386. When a cemetery has been abandoned and its property is transferred to a municipality pursuant to the prior version of K.S.A. 17-1367, there is no compensable taking of the property of the cemetery corporation because the transfer is a noncompensable exercise of the police power. 228 Kan. at 388.

The County argues that *State ex rel. Stephan v. Lane* is applicable here because that case demonstrates that the amendment did not change the existing law. We disagree. *Lane* addressed constitutionality in the context of the rights of the cemetery corporation, *not* its creditors. Next, the County argues *Lane* is applicable here because the amendment invalidating preexisting judgment liens was a valid exercise of the police power over the subject of an abandoned cemetery. The County suggests that a valid exercise of the police power does not incur liability for any resulting injury to private individuals, citing *Smith v. State Highway Commission*, 185 Kan. 445, 453, 346 P.2d 259 (1959). We also disagree with this assertion.

In *Smith*, our Supreme Court held that the State's absolute control over the streets and highways within its borders is subject to constitutional limitations and that any restriction of curtailment of an abutter's rights of access must be *reasonable* to be a valid exercise of the police power. 185 Kan. at 454. *Smith* does not hold

or suggest in any way that the exercise of police power is inherently unfettered by *any* constitutional limitations. And in this regard, *Smith* is consistent with well-recognized principles of constitutional law.

Indeed, it is generally recognized that an exercise of police power is subject to constitutional limitations:

"While the police power is the least limitable of governmental powers, it is not, despite certain language to be found in some decisions, a totally unlimited power. The legislature may not, under the guise of regulating in the public interest, impose conditions which are on their face unreasonable, arbitrary, discriminatory, or confiscatory. Moreover, the police power is, by its nature, exercisable only restrictively, restriction being implicit in the power itself.

"The judicial branch of the government is the final arbiter of the limitations applicable to the police power; but the notion that courts may freely assume the role of arbiters of public policy is very much exaggerated, for the courts should especially avoid assuming such a role in the face of a statutory scheme which bespeaks its own policy considerations. The limitations of the police power have never been drawn with exactness by the courts, and its boundary line cannot be determined by any general formula in advance." 16A Am. Jur. 2d, Constitutional Law § 329.

See *Wipperfurth v. U-Haul Co. of Western Wisconsin, Inc.*, 101 Wis. 2d 586, 304 N.W.2d 767 (1981); *City of Chicago v. Sheridan*, 40 Ill. App. 3d 886, 353 N.E.2d 270 (1976).

As we measure the reasonableness of the legislative enactment before us, we are mindful that Heinsohn does not challenge the facial constitutionality of the amendment, but rather challenges its application to him. This is a crucial distinction, because we are not called upon to determine the reasonableness of the amendment itself, but rather we must examine its retroactive application to defeat Heinsohn's otherwise valid and preexisting judgment lien.

Here, there is no question that the amendment intended a retrospective effect. The 2008 enactment invalidated any and all liens "after January 1, 2003." Even where the legislative intent for retroactive application is clear, however, courts must still consider whether retrospective application of legislation will affect vested or substantive rights and therefore violates the due process provisions of the United States and Kansas Constitutions. See *In re Care and Treatment of Hunt*, 32 Kan. App. 2d 344, 362, 82 P.3d 861,

*rev. denied* 278 Kan. 845 (2004); *Southwestern Bell Tel. Co. v. Kansas Corporation Comm'n,* 29 Kan. App. 2d 414, 423, 29 P.3d 424 (2001).

Our Supreme Court has provided recent guidance in this area in addressing the nature of the rights in a fully recorded mechanic's lien when that lien has been imperiled by a statutory alteration in notice requirements. In *Owen Lumber Co. v. Chartrand,* 276 Kan. 218, 73 P.3d 753 (2003), the court reviewed case law determining whether a right was "vested" and concluded that it would violate due process to retroactively deprive a fully compliant mechanic's lienholder of rights otherwise vested under statutory law. In so holding, the court noted the difficulties involved in a "vested right" analysis:

> " 'One commentator has aptly noted: "[I]t has long been recognized that the term 'vested right' is conclusory—a right is vested when it has been so far perfected that it cannot be taken away by statute." Hochman, *The Supreme Court and the Constitutionality of Retroactive Legislation,* 73 Harv. L. Rev. 692, 696 (1960). Numerous authorities have recognized inconsistencies in the use of the term "vested rights" in the context of retroactive legislation, and some have questioned the wisdom of a vested rights analysis. See *Phillips v. Curiale,* 128 N.J. 608, 621, 608 A.2d 895 (1992) (" '[D]iscerning commentators and judges' have questioned the value of vested rights analysis."); *Peterson v. City of Minneapolis,* 285 Minn. 282, 287, 173 N.W.2d 353 (1969) ("[R]etroactive laws are usually upheld as long as they do not interfere with *vested* legal rights. The rule itself seems simple enough, but the difficulty comes in defining what is a vested right."). 276 Kan. at 221.
>
> " 'Reviewing "vested rights" cases requires a look beyond the labels to the ingredients which shaped the courts' conclusions. Important factors are: (1) the nature of the rights at stake (*e.g.,* procedural, substantive, remedial), (2) how the rights were affected (*e.g.,* were the rights partially or completely abolished by the legislation; was any substitute remedy provided), and (3) the nature and strength of the public interest furthered by the legislation. See *Hochman,* 73 Harv. L. Rev. at 697.' [Citation omitted.]" 276 Kan. at 222.

Ultimately, in *Owen Lumber,* the court

> "balanced the factors articulated in [*Resolution Trust Corp. v.*] *Fleischer* [257 Kan. 360, 892 P.2d 497 (1995),] by weighing the remedial or procedural nature of the statute against the determination of how rights were affected and whether any substitute remedy was provided." 276 Kan. at 227.

## Nature of the Rights at Stake and How They Were Affected

Applying this analysis, we must first note that a judgment lien has long been considered a statutory right that should receive the most liberal construction. *Babcock v. Jones*, 15 Kan. 296 (1875); 16B Am. Jur. 2d, Constitutional Law § 600 ("the right to enforce payment of a judgment is a property right which is beyond the power of a state to destroy"). Although a judgment lien may be considered a remedial right, this feature alone does not defeat Heinsohn's due process interests. See *Owen Lumber*, 276 Kan. at 227. Here, Heinsohn's remedial rights were not merely modified in some way, they were "quashed," nullified, and rendered "void and unenforceable" in the absolute sense.

As explained by the court in its *Owen Lumber* opinion, abrogating a remedial right may not survive constitutional scrutiny.

"[W]hile we have applied the general rule that a legislature may retrospectively modify the remedies by which rights are enforced, we have not done so when the modification has the practical effect of abrogating the right. In other words, without specifically articulating so, even in the situation of remedial or procedural statutes, Kansas appellate courts have looked beyond the nature of the statute (procedural, remedial, or substantive) and examined how the rights were affected, whether there was a substitute remedy, and the public interest furthered by the legislation." 276 Kan. at 225.

## Availability of Substitute Remedies

Although the County argues that Heinsohn had substitute remedies, any such alternatives were certainly not provided to him by the amendment and were speculative at best. We agree with Heinsohn, who argues on appeal that his rights to enforce his judgment against any of the judgment debtors are not likely to succeed:

"[I]f the County believes that a bare judgment against Mike W. Graham & Associates, LLC leaves a viable substitute remedy, perhaps the County can explain why it had sequestration order [*sic*] over all of the defendant's assets for nearly 3 years, yet never accounted for receiving, taking charge of or collecting a single asset of Mike W. Graham & Associates, LLC."

More importantly, the retroactive amendment to K.S.A. 17-1367 purported to completely nullify Heinsohn's rights to enforce his judgment against any and all cemetery property. We do not con-

sider the availability of pursuing *other* judgment debtors to be a "substitute remedy" for purposes of our "vested rights" analysis.

### Strength of the Public Interest Furthered

Finally, the County urges us to consider the strong public interest furthered by the amendment, suggesting this is also a legitimate factor to be considered, citing *Owen Lumber* and *Fleischer*. We agree as to its legitimacy as a factor to be considered (see *Owen Lumber*, 276 Kan. at 222), but we are not convinced that the public interest here outweighs Heinsohn's vested interests. The County argues that exposing abandoned cemetery property to payment of outstanding judgment liens would imperil the public purpose and unique character of cemetery lands. But this argument exaggerates the exposure of such property to Heinsohn's lien; the cemetery property devoted to burial lots for purposes of sepulture, including those sold and conveyed although not yet occupied, is clearly exempt from attachment or execution under K.S.A. 17-1302, which statute is not challenged by Heinsohn. Thus, the public interest in cemetery property—or at least the basis for such interest—is not directly challenged by Heinsohn's lien, and the only remaining consideration is the protection of cemetery property *not already devoted to burial lots*. Obviously, this interest is not that sought to be protected by the unique status of "a place or area of ground set apart for the burial of the dead." See *State ex rel. Stephan v. Lane*, 228 Kan. at 386. Here, Heinsohn expressly pursued only the cemetery property *not* devoted to the burial of the dead.

We also note that other jurisdictions find no public policy impediment for allowing execution against assets of a cemetery corporation not used for burial. See *Omaha National Bank, Trustee v. West Lawn Mausoleum Association*, 158 Neb. 412, 424, 63 N.W.2d 504 (1954) (as specified in the statute, crypts, lots, tombs, niches, or vaults are not subject to taxation, execution, attachment, or any other liens or process, but those not sold or contracted for or held for burial purposes are not exempt); *Gottlieb v. West Ridgelawn Cemetery*, 109 N.J. Eq. 585, 158 A. 422 (N.J. App. 1932) (land of the cemetery that is part of a tract laid out in lots for burial purposes cannot be sold for the purpose of satisfying a judgment

even if it is not presently used for such purposes); *Spear v. Locust Wood Cemetery,* 72 N.J. Eq. 821, 66 A. 1068 (N.J. App. 1907) (statute indicates an intention to extend taxation and execution exemptions only to lands actually used for cemetery purposes).

Finally, we examine the County's argument that to permit any recovery for Heinsohn would be "contrary to simple concepts of equity" and "create a mess" not contemplated by the legislature. That argument goes:

"[T]he rule of law that would flow from this case would logically allow all such debts, liens, and creditors to extract their payment for such debts from either the perpetual care monies or directly from the lands or property remaining with the cemetery operation. Such a rule of law would create a mess that the statutory scheme and the legislative intent simply could not contemplate and would not support. In the present case, even if all of the open areas of land were sold and all of the perpetual care funds were thrown into the fund, all of the debts of the prior operator for operation of the cemetery could not be paid. The next logical question then becomes, who pays the remainder of the debts . . . do we ask the County Taxpayers to provide the remainder of the necessary funds?"

We are unable to conceive of any such "mess" because once the cemetery property not otherwise exempt has been sold to satisfy creditors, the balance of any judgment debt must remain unsatisfied and the legislative intent to thereafter preserve the abandoned cemetery at the expense of the municipality has been honored. Obviously, the County would prefer to have any excess cemetery property to assist in its future maintenance obligations; this interest, however, is clearly inferior to the vested rights of judgment creditors.

We conclude that it is clear beyond a substantial or reasonable doubt that the 2008 amendment of K.S.A. 17-1367, which was intended to retroactively invalidate Heinsohn's valid judgment lien, was unconstitutionally applied to defeat his preexisting lien rights, thus infringing upon due process of law. The district court erred in so applying the amended statute, thus requiring that we reverse and remand for further proceedings.

Although Heinsohn has urged us to opine on other matters, we conclude other issues were neither argued before nor addressed

by the district court, and we therefore decline to address them on appeal.

Reversed and remanded.